CITY OF BOWLING GREEN, APPELLANT, *v.* GODWIN, APPELLEE.

[Cite as *Bowling Green v. Godwin,*
110 Ohio St.3d 58, 2006-Ohio-3563.]

(Nos. 2005–1363 and 2005–1560—Submitted March 14, 2006—Decided July 26, 2006.)

MOYER, C.J.

{¶ 1} The Sixth District Court of Appeals has certified this case pursuant to Section 3(B)(4), Article IV, Ohio Constitution and App.R. 25. It found its judgment to be in conflict with the judgments of the Fourth District Court of Appeals in *State v. Dunfee*, Athens App. No. 02CA37, 2003–Ohio–5970, 2003 WL 22532819, and the Twelfth District Court of Appeals in *State v. Walters*, Warren App. No. CA2004–04–043, 2005-Ohio-418, 2005 WL 280835, on the following issue: "Whether disregard of a traffic control device that lacks the statutorily required authorization can serve as the basis for a traffic stop."

{¶ 2} We answer the certified question in the affirmative as follows: An officer who personally observes a driver disregard a traffic-control device that complies with the Ohio Manual of Uniform Traffic Control Devices may have probable cause under the totality of the circumstances to stop the driver, even though the device was not installed in compliance with a local ordinance requiring approval of city council for the installation of traffic-control devices.

{¶ 3} Shortly after 2:00 a.m. on November 14, 2003, an officer of the Bowling Green Police Department observed a car driven by appellee, Bradley F. Godwin, exit City Lot 2, a municipal parking lot, onto East Wooster Street, in violation of posted signs. The officer stopped appellee and cited him for violating Bowling Green Code of Ordinances ("BGCO") 70.15A, which establishes the offense of

failure to observe a traffic-control device. Based upon his observation of appellee's conduct during the traffic stop, the officer also cited appellee for driving under the influence of alcohol, in violation of BGCO 73.01(A)(1), and placed him under arrest.

{¶ 4} Six signs advise drivers in City Lot 2 that the intersection of the parking lot with East Wooster Street may not be used as an exit. Appellant, the city of Bowling Green, and appellee stipulated that the six signs are officially recognized in the Ohio Manual of Uniform Traffic Control Devices for Streets and Highways ("MUTCD"), adopted by the Ohio Department of Transportation pursuant to R.C. 4511.09.

{¶ 5} Three signs on a single post are posted to the left of the intersection at the junction of the parking-lot driveway with the sidewalk. The top sign is the left-turn-prohibition sign identified in the MUTCD as R3–2 and displays the symbol of a red circle surrounding a black left-turn arrow with a red slash through it. Beneath that, a sign displaying the message "DO NOT ENTER" consistent with sign R5–1 in the MUTCD is posted. The bottom sign, designated R5–1a in the MUTCD, indicates "WRONG WAY" in white letters on a red background. The same three signs are posted on a single post on the right side of the driveway, with the exception that the arrow on the top sign, labeled R3–1 in the MUTCD, indicates that right turns are prohibited. The parties further stipulated that the signs were not irregular in size, height, placement, visibility, or distance.

{¶ 6} Appellee filed a motion to suppress evidence obtained in connection with the stop, contending that the stop was unreasonable under the Fourth Amendment. In its opinion denying the motion, the trial court acknowledged that the charge of failure to observe a traffic-control device was subject to dismissal because the prosecution had not shown that the city council had approved the posting of the six signs at City Lot 2 as required by former BGCO 70.66. The court concluded that since the signs had never been properly approved, failure to obey the signs cannot be a chargeable offense. However, the trial court held that lack of authorization for traffic-control signs does not necessarily invalidate a traffic stop based on disregard of those signs, as an officer cannot reasonably be expected to know that a traffic-control sign was not properly authorized. Thus, the court allowed the use of evidence obtained during the stop to prosecute the driving-under-the-influence charge.

{¶ 7} Appellee pleaded no contest to the offense of driving under the influence and was convicted.

{¶ 8} The Court of Appeals for the Sixth District, in a split decision, reversed the conviction, relying on its previous decision in *State v. Berry*, Wood App. No. WD–02–043, 2003-Ohio-1620, 2003 WL 1699840. In that case, a Bowling Green

police officer observed a driver leaving a city lot from an exit marked by a sign stating "Do Not Exit." The sign was not one recognized by the MUTCD and was posted several feet lower than prescribed by the manual for similar signs.

{¶ 9} In *Berry*, the court of appeals affirmed the trial court's suppression of the evidence seized as a result of the ensuing stop. The court deemed the traffic stop unreasonable because "the officer could not have had reasonable, articulable suspicion that [the driver] was violating the law because the sign was a nullity—it does not exist under Ohio law."

{¶ 10} The cause is now before this court upon our determination that a conflict exists and upon our acceptance of a discretionary appeal.

{¶ 11} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit unreasonable searches and seizures, including unreasonable automobile stops. *Whren v. United States* (1996), 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89; *Dayton v. Erickson* (1996), 76 Ohio St.3d 3, 11, 665 N.E.2d 1091. "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren* at 810, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89. This court has expressly held that "[w]here a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution." *Erickson*, 76 Ohio St.3d 3, 665 N.E.2d 1091, syllabus.

{¶ 12} The trial court tested the constitutionality of appellee's stop for a minor traffic offense by considering whether the officer had "reasonable, articulable suspicion" that a traffic offense had occurred. The court of appeals concluded, however, that probable cause must exist to justify an "ordinary stop in which a police officer witnesses a violation of the traffic code and stops the motorist to issue a citation, a warning, or effect an arrest."

{¶ 13} As observed by a Michigan federal district court, "[a]uthorities seem to be split as to whether a traffic stop is reasonable when supported merely by reasonable suspicion, or whether the heightened standard of probable cause must underlie the stop." *Gaddis ex rel. Gaddis v. Redford Twp.* (E.D.Mich.2002), 188 F.Supp.2d 762, 767.[1] In *Erickson*, a case in which an officer personally observed

---

1. See, also, Criminal Procedure—Fourth Amendment—Search and Seizure—Tenth Circuit Applies Reasonable Suspicion Standard to Stops for Minor Traffic Infractions—*United States v. Callarman*, 273 F.3d 1284 (10th Cir.2001), cert. denied, 535 U.S. 1072, 122 S.Ct. 1950, 152 L.Ed.2d 853 (2002), 116 Harv.L.Rev. 697, observing that, since the year preceding *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, "the law has moved from requiring probable cause for all seizures, to allowing temporary seizures on reasonable suspicion of potentially dangerous offenses, to, as exemplified in [*United States v.*] *Callarman* [ (C.A.10, 2001), 273 F.3d 1284], allowing temporary

a driver failing to signal a turn, we determined that the officer had probable cause to believe that a traffic offense had been committed and therefore found it unnecessary to consider separately the lesser standard of reasonable suspicion. Id., 76 Ohio St.3d at 11, 665 N.E.2d 1091, fn. 2. Similarly, in this case, we conclude that the Bowling Green police officer, having observed the appellee violating the posted signs, had probable cause to believe that the offense of disregarding a traffic-control device had been committed. We therefore need not decide whether mere reasonable suspicion of the commission of a minor misdemeanor traffic offense, as opposed to probable cause, justifies an officer in stopping a driver.

{¶ 14} Probable cause is determined by examining the historical facts, i.e., the events leading up to a stop or search, "viewed from the standpoint of an objectively reasonable police officer." *Ornelas v. United States* (1996), 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911. Determination of probable cause that a traffic offense has been committed, " 'like all probable cause determinations, is fact-dependent and will turn on what the officer knew *at the time he made the stop*.' " (Emphasis sic.) *Erickson*, 76 Ohio St.3d at 10, 665 N.E.2d 1091, quoting *United States v. Ferguson* (C.A.6, 1993), 8 F.3d 385, 391. Thus, the question whether a traffic stop violates the Fourth Amendment to the United States Constitution requires an objective assessment of a police officer's actions in light of the facts and circumstances.

{¶ 15} The trial court correctly concluded that the fact that appellee could not be convicted of failure to obey a traffic-control device is not determinative of whether the officer acted reasonably in stopping and citing him for that offense. Probable cause does not require the officer to correctly predict that a conviction will result. We agree with the sentiment expressed in a federal case involving an officer who had stopped a vehicle based on the mistaken belief that the windows were tinted darker than the law permitted. The court observed that the officer "was not taking the bar exam. The issue is not how well [the officer] understood California's window tinting laws, but whether he had objective, probable cause to believe that these windows were, in fact, in violation." *United States v. Wallace* (C.A.9, 2000), 213 F.3d 1216, 1220.

{¶ 16} Similarly, in this case, the issue is not how well the officer understood the city's ordinances requiring the authorization of the posting of traffic-control devices. Rather, the existence of probable cause depends on whether an objectively reasonable police officer would believe that appellee's conduct in exiting

---

seizures on reasonable suspicion of the most minor of offenses," and suggesting that decisions such as *Callarman* push in the direction of further erosion of Fourth Amendment protections. (Footnote omitted.) 116 Harv.L.Rev. at 704.

City Lot 2 constituted a traffic violation, based on the totality of the circumstances known to the officer at the time of the stop.

{¶ 17} The city has stipulated that the sole basis for the traffic stop was the officer's observation of appellee's failure to comply with the posted signs that prohibited exit from the parking lot to East Wooster Street. The signs encountered by appellee in City Lot 2 comply with the MUTCD and are consistent with those encountered on a regular basis by drivers and police officers in Ohio. Nothing in the record or in the arguments of counsel justifies the conclusion that an objectively reasonable officer would have had any reason to doubt their enforceability. The officer personally observed appellee proceed in violation of the signs.

{¶ 18} In view of all of the facts available to the officer at the time of the stop, the police officer had probable cause to believe that the appellee violated the city's ordinances, and his stop of appellee was not unreasonable under the Fourth Amendment. The court of appeals erred in finding that the stop was unreasonable and that appellee's motion to suppress evidence should have been granted.

{¶ 19} We therefore reverse the judgment of the court of appeals and reinstate appellee's conviction for driving under the influence of alcohol.

Judgment reversed.

RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

———————

Matthew L. Reger, Bowling Green Prosecuting Attorney, for appellant.

Albert L. Potter II, for appellee.

Jim Petro, Attorney General, Douglas R. Cole, State Solicitor, and F.E. Crawford, Deputy Solicitor, urging reversal for amicus curiae, Ohio Attorney General.