DECISION.
{¶ 1} Following the denial of his motion to suppress, Timothy Leonard entered a no-contest plea to operating a vehicle under the influence of alcohol, in violation of R.C. 4511.19(A)(1)(a). The trial court accepted the plea, found Leonard guilty of the offense, sentenced him, and entered judgment accordingly.
 {¶ 2} In a single assignment of error, Leonard now argues that the trial court erred by denying his motion to suppress.
 {¶ 3} Appellate review of a motion to suppress presents a mixed question of law and fact.[1] In considering a motion to suppress, the trial court is in the best position to decide the facts and to evaluate the credibility of the witnesses.[2] Consequently, we must accept the trial court's findings of fact if they are supported by competent and credible evidence.[3] With respect to the trial court's conclusions of law, however, we apply a de novo standard of review and decide whether the facts satisfy the applicable legal standard.[4]
 The Traffic Stop {¶ 4} On February 19, 2005, just after 2:00 a.m., Ohio State Highway Patrol Trooper Robert Hayslip stopped Leonard on suspicion that his van's windshield and side windows were excessively tinted. When Trooper Hayslip compared tint samples with Leonard's side windows, he determined that the windows were not excessively tinted, as he had initially believed. But his comparison of the tint samples to *Page 3 
Leonard's windshield revealed that the windshield was excessively tinted. And the tint on Leonard's windshield extended well below its AS-1 line.[5]
 {¶ 5} Trooper Hayslip asked Leonard for his driver's license and proof of insurance. Leonard said that he did not have his license with him, and that it was in his house. Trooper Hayslip could smell an odor of alcohol coming from inside Leonard's van. He saw an unopened container of beer in the van's console, and he noticed that Leonard's eyes were bloodshot and glassy. He asked Leonard if he had been drinking, and Leonard responded that he had not.
 {¶ 6} Trooper Hayslip asked Leonard to get out of the van, and he explained the equipment violation. The trooper then asked Leonard to sit in the front passenger seat of his patrol car. Once Leonard was seated in the patrol car, Trooper Hayslip noticed a strong odor of alcohol on his breath. He asked Leonard how much he had had to drink. Leonard said that he had had "a couple," and that he had just left a bar.
 {¶ 7} When Trooper Hayslip asked Leonard if he wanted to perform field-sobriety tests, Leonard asked him if the testing was necessary. Then Leonard admitted that he had "shotgunned" four or five beers in the "last fifteen minutes" because he had been unable to sleep. At that point, Trooper Hayslip conducted a horizontal-gaze-nystagmus test.[6] *Page 4 
 The Traffic Stop was Supported by Probable Cause {¶ 8} First, Leonard argues that Trooper Hayslip's misunderstanding of Ohio's window-tinting law rendered the traffic stop nothing more than a random stop in violation of the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution.[7]
 {¶ 9} A traffic stop is reasonable for Fourth Amendment purposes if the police officer has "probable cause to believe that a driver is violating any one of the multitude of applicable traffic and equipment regulations."[8]
 {¶ 10} Leonard argues that Trooper Hayslip made two misstatements with respect to Ohio's window-tinting law. At one point, Trooper Hayslip testified that a windshield "must allow 50 percent light through." At another point, Trooper Hayslip testified that tinting applied to a windshield may not extend downward beyond the AS-1 line.
 {¶ 11} Both of these statements were incorrect. Contrary to Trooper Hayslip's assertion, Ohio requires a windshield to have a light transmittance of at least 70 percent.[9] In effect, Trooper Hayslip's misapprehension of this requirement would inure to a driver's benefit by allowing much less light transmittance. And contrary to Trooper Hayslip's testimony, Ohio's window-tinting regulations specifically apply to tinting material that extends downward beyond the windshield's AS-1 line (or five inches from the top of the windshield, whichever is closer to the top).[10] *Page 5 
 {¶ 12} Despite Trooper Hayslip's misconceptions, we find the traffic stop was proper. In United States v. Wallace,[11] the United States Court of Appeals for the Ninth Circuit upheld a traffic stop conducted by a police officer who had mistakenly believed that any tinting of a vehicle's front windows was illegal. The court noted that "[t]he tintingwas illegal but for a different reason — because it was over twice as dark as the law allows. * * * That [the officer] had the mistaken impression that all front-window tint is illegal is beside the point. [The officer] was not taking the bar exam. The issue is not how well [the officer] understood California's window tinting laws, but whether he had objective, probable cause to believe that these windows were, in fact, in violation."
 {¶ 13} The Ohio Supreme Court cited Wallace with approval inBowling Green v. Godwin,[12] where the court held that a police officer who observes a driver disregard a traffic-control device may have probable cause under the totality of the circumstances to stop the driver, even though the device was not installed in compliance with a local ordinance requiring approval of city council for the installation of traffic-control devices.[13] The court explained that a determination of probable cause depends on whether an objectively reasonable police officer would believe that a traffic or equipment violation has occurred.[14]
 {¶ 14} In this case, the issue before us is not how well Trooper Hayslip understood Ohio's window-tinting law. Instead, we must determine whether an objectively reasonable police officer would have believed that the window tinting on *Page 6 
Leonard's van constituted an equipment or traffic violation, based on the totality of the circumstances known to the officer at the time of the stop.
 {¶ 15} Here, Trooper Hayslip's initial observation of Leonard's van caused him to believe that its windshield was illegally tinted. Because this suspicion was confirmed when he compared his tint samples to Leonard's windshield, the traffic stop was supported by probable cause. Our determination that the officer had probable cause to believe that an offense had been committed obviates our need to separately consider the lesser standard of reasonable suspicion.[15]
 {¶ 16} Because Trooper Hayslip had lawfully stopped Leonard for the window-tinting violation, he properly ordered Leonard to get out of the van.[16] And Leonard's failure to produce a driver's license was a lawful reason for detaining him in the patrol car.[17]
 Leonard Was Not Subject to Custodial Interrogation {¶ 17} Next, Leonard argues that the trial court should have suppressed the statements he had made after Trooper Hayslip ordered him to sit in the patrol car because the statements were obtained in violation of Miranda v. Arizona.[18]
 {¶ 18} Miranda defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."[19] In determining whether a person was in custody for Miranda purposes, courts must make a two-part inquiry: *Page 7 
"First, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave."[20]
 {¶ 19} Generally, motorists temporarily detained pursuant to ordinary traffic stops are not in custody for purposes of Miranda.[21]
Moreover, routine questioning of a motorist during a traffic stop does not automatically convert the detention into a custodial interrogation.[22] But if a stopped motorist is then subjected to treatment that renders him in custody for practical purposes, he is entitled to the protections spelled out by Miranda.[23]
 {¶ 20} In State v. Farris,[24] after stopping a driver for speeding, a police officer smelled burnt marijuana coming from inside the car. The officer asked the driver to step out of the car, patted the driver down, and placed him in the front seat of his patrol car. Without administering a Miranda warning, the officer asked the driver about the smell of marijuana and told him that he was going to search the car. At that point, the driver admitted that a marijuana pipe was in a bag in the trunk.
 {¶ 21} The Ohio Supreme Court held that the police officer's treatment of the driver after the traffic stop had placed the driver in custody for practical purposes. The court held that a reasonable driver would have understood himself to be in police custody as he sat in the police cruiser where the officer (1) had patted him down, (2) had taken his car keys, and (3) had told him that he was going to search his *Page 8 
car. The court held that the driver's prewarning statements made while in custody should have been suppressed.[25]
 {¶ 22} Compared to the facts in Farris, the intrusion in this case was minimal. Trooper Hayslip did not conduct a pat-down search before placing Leonard in the front passenger seat of his patrol car and did not take Leonard's car keys or search his van. And Trooper Hayslip did not handcuff Leonard or subject him to a lengthy detention.
 {¶ 23} Under these circumstances, a reasonable person in Leonard's position would have understood that he was not in police custody for practical purposes. Consequently, Leonard's statements to Trooper Hayslip were not obtained in violation of Miranda.
 Probable Cause to Arrest {¶ 24} Finally, Leonard argues that his arrest was not based upon probable cause. A warrantless arrest is reasonable under theFourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed.[26] The existence of probable cause depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.[27]
 {¶ 25} In this case, the strong odor of alcohol on Leonard's breath, his glassy and bloodshot eyes, his admission to having just left a bar where he had shotgunned *Page 9 
four to five beers, and the unopened container of beer in the van's console amply supported Trooper Hayslip's decision to arrest Leonard.
 {¶ 26} Consequently, we hold that the trial court properly denied Leonard's motion to suppress. We overrule the assignment of error and affirm the trial court's judgment.
Judgment affirmed.
PAINTER, P.J., and WINKLER, J., concur.
RALPH WINKLER, retired, of the First Appellate District, sitting by assignment.
[1] State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372,797 N.E.2d 71, at ¶ 8.
[2] State v. Mills (1992), 62 Ohio St.3d 357, 366,582 N.E.2d 972.
[3] State v. Fanning (1982), 1 Ohio St.3d 19, 437 N.E.2d 583.
[4] Burnside, supra, at ¶ 8.
[5] As Trooper Hayslip explained, the AS-1 line on the windshield is factory-installed.
[6] Following the hearing, the trial court suppressed the results of the horizontal-gaze-nystagmus test.
[7] See Delaware v. Prouse (1979), 440 U.S. 648, 99 S.Ct. 1391.
[8] Whren v. United States (1996), 517 U.S. 806, 116 S.Ct. 1769, citing Prouse, supra, at 661, 99 S.Ct. 1391; see, also, Dayton v.Erickson, 76 Ohio St.3d 3, 1996-Ohio-431, 665 N.E.2d 1091.
[9] See Ohio Adm. Code 4501-41-03(A)(2).
[10] Ohio Adm. Code 4501-41-03(A)(5).
[11] (C.A.9, 2000), 213 F.3d 1216, cert. denied sub. nom. Wallace v.United States (2002), 537 U.S. 1011, 123 S.Ct. 480.
[12] 110 Ohio St.3d 58, 2006-Ohio-3563, 850 N.E.2d 698, at ¶ 15.
[13] Id., syllabus.
[14] Id. at ¶ 16.
[15] See Godwin, supra, at ¶ 13, citing Erickson, supra, at 11,665 N.E.2d 1091, fn.2.
[16] See Pennsylvania v. Mimms (1977), 434 U.S. 106, 111,98 S. Ct. 330, 333, fn. 6.
[17] State v. Lozada, 92 Ohio St.3d 74, 77, 2001-Ohio-149,748 N.E.2d 520, citing State v. Evans (1993), 67 Ohio St.3d 405,618 N.E.2d 162.
[18] (1966), 384 U.S. 436, 86 S.Ct. 1602.
[19] Id. at 444.
[20] Thompson v. Keohane (1995), 516 U.S. 99, 112,116 S. Ct. 457.
[21] See Berkemer v. McCarty (1984), 468 U.S. 420, 440,104 S.Ct. 3138.
[22] See State v. Polen, 1st Dist. Nos. C-050959 and C-050960,2006-Ohio-5599, citing State v. Kiefer, 1st Dist No. C-030205,2004-Ohio-5054; Berkemer, supra.
[23] Berkemer, supra, at 440; State v. Farris, 109 Ohio St.3d 519,2006-Ohio-3255, 849 N.E.2d 985.
[24] 109 Ohio St.3d 519, 2006-Ohio-3255, 849 N.E.2d 985.
[25] Id. at ¶ 14.
[26] See United States v. Watson (1976), 423 U.S. 411, 417-424,96 S. Ct. 820; Brinegar v. United States (1949), 338 U.S. 160, 175-176,69 S. Ct. 1302.
[27] Maryland v. Pringle (2003), 540 U.S. 366, 371,124 S.Ct. 795. *Page 1