OPINION. *Page 2 
{¶ 1} In one assignment of error, defendant-appellant Timothy Lee Booth appeals the judgment of the trial court convicting him of operating a motor vehicle while intoxicated. His sole argument is that the trial court erred when it denied his suppression motion concerning the results of the breathalyzer test administered in this case. For the reasons set forth below, the contention lacks merit.
 Citizen Calls Result in OVI Arrest {¶ 2} Several citizens called law enforcement officials regarding an allegedly drunk driver. Deputy Michael Bingham of the Hamilton County Sheriffs Department found the vehicle, which was parked by the time he arrived. Booth was the only individual in the car. When Deputy Bingham noticed a strong odor of alcohol, he asked Booth if he had been drinking. Booth admitted that he had consumed six beers and six shots of Jagermeister at the Metropolis Bar, where he worked as a bartender. It was a half-hour past noon. Deputy Bingham asked Booth to perform field sobriety tests, which he failed. He was then arrested for suspicion of operating a vehicle while intoxicated (OVI) and transported to a sheriff's station.
 {¶ 3} At the station, Booth was observed for over 20 minutes before the breathalyzer test was performed. During that time, he urinated on himself and belched repeatedly. The officer administering the test testified that "I did not see any type of regurgitation. I just seen [sic] somebody who obviously had air in his system * * *." He testified that he did not restart the 20-minute waiting period because "I didn't feel anything came up into his mouth to interfere."
 {¶ 4} In fact, he testified that any regurgitation would have been reflected in the test. "Well, the machine's going to obviously pick that up, because you're going *Page 3 
to have in a situation [sic] where if there is alcohol still present inside the mouth, obviously it's going to register an extremely high number, then of course you're going to have that sudden drop, and that's actually what the machine is looking for."
 {¶ 5} The officer testified that Booth's testing resulted in a "steady rise" in the numbers and that "[i]t wasn't a situation where we had a sudden jump and then a decrease * * *." He said that it was a good test and that there was no belching while the test was performed.
 {¶ 6} Booth registered .355 — over four times the .08 legal limit and over twice the legal limit for the enhanced .17 offense. He was charged with OVI both under the per se provision and under the driving-while-impaired provisions.[1] Booth filed a motion to suppress that was denied by the trial court. He entered a no-contest plea and was convicted and sentenced accordingly.
 Belching Alone Does Not Invalidate Breathalyzer Results {¶ 7} For a motion to suppress the results of a breathalyzer test, the Ohio Supreme Court has determined that there are shifting burdens.[2]
First, the defendant must challenge the admission of the test by a pretrial motion to suppress.[3] The burden then shifts to the state to show substantial compliance with regulations promulgated by the Ohio Department of Health.[4] If the state makes that showing, a rebuttable presumption arises that the test results are admissible.[5] At that point, the burden shifts back to the defendant to show "that he was prejudiced by anything less than strict compliance."[6] *Page 4 
 {¶ 8} While he does not cite Ohio Adm. Code 3701-53-02(C) in his brief, Booth argues that the state failed to substantially comply with the regulation. It requires law enforcement officials to follow a breath-testing machine's operational checklist when administering a breath test. The checklist for the Intoxilyzer 5000 — the machine used in this case — provided that an officer had to "[o]bserve subject for twenty minutes prior to testing to prevent oral intake of any material."
 {¶ 9} Booth argues that belching alone was sufficient to taint the 20-minute observation period. He cites our decision in State v.Douglas, which stated that "the reason for waiting twenty minutes before testing a suspect is to eliminate the possibility that the test result is a product of anything other than the suspect's deep lung breath. Because the accuracy of the test results can be adversely affected if the suspect either ingests material orally, like food or drink, or regurgitates material internally, by belching or vomiting, the suspect must be observed for twenty minutes to verify that no external or internal material may cause a false reading."[7]
 {¶ 10} Booth emphasizes that "the [20]-minute observation period is to `eliminate the possibility that the test result is the product of anything other than the suspect's deep lung breath.'" Since he had done one of the four things listed (ingested food or drink, belched, or vomited), Booth continues, the test was invalid and the results should have been suppressed.
 {¶ 11} Not so. A close reading of Douglas indicates that two things can invalidate the waiting period: (1) ingesting material orally (like food or drink), or (2) regurgitating material internally (by belching or vomiting). It is not the belching itself, but rather the regurgitation of material, that can cause problems. *Page 5 
 {¶ 12} Further, the Ohio Supreme Court has noted that "[t]he mere assertion that ingestion was hypothetically possible ought not to vitiate the observation period * * *."[8] Other courts have similarly held that ingestion has to be more than just "hypothetically possible."[9] In fact, testimony from law enforcement officials that a defendant did not ingest or regurgitate anything shifts the burden to the defendant to affirmatively show that he did.[10]
 {¶ 13} The officer who performed the test stated that he did not witness "any type of regurgitation." Further, he testified that the presence of such material would have been demonstrated by an abnormal spike in the test readings. While Booth argues that this feature of the breathalyzer did not necessarily make the test valid because the issue was not "whether [ingestion or regurgitation] actually affected the test," the fact that the machine did not detect any mouth alcohol corroborated the officer's testimony that he saw no regurgitation. Therefore, the only evidence before the trial court was that there was no regurgitation during the 20-minute observation period.
 {¶ 14} In light of this, the state demonstrated at least substantial compliance with the regulations established by the Ohio Department of Health. Since Booth did not rebut the presumption — with evidence that actual regurgitation had occurred during the observation period — the test results were properly admitted. *Page 6 
 {¶ 15} Our decision is in line with the only case on point,Columbus v. Ziegler[11] — a case from the Tenth Appellate District that held that the defendant had failed to show that the belches were such that they invalidated a breathalyzer result. Booth, on the other hand, has been unable to cite a single case for the proposition that belching during the observation period is itself sufficient to invalidate a breathalyzer result.
 {¶ 16} Accordingly, we overrule Booth's assignment of error and affirm the trial court's judgment.
Judgment affirmed.
PAINTER, P.J., and WINKLER, J., concur.
RALPH WINKLER, retired, from the First Appellate District, sitting by assignment.
[1] R.C. 4511.19(A)(1)(a) and 4511.19(A)(1)(h).
[2] State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372,797 N.E.2d 71.
[3] Id. at 157.
[4] Id.
[5] Id.
[6] Id.
[7] State v. Douglas, 1st Dist. No. C-030897, 2004-Ohio-5726, ¶ 9, citing State v. Steele (1977), 52 Ohio St.2d 187, 190,370 N.E.2d 740.
[8] Steele, supra, quoting Wester v. State (Alaska 1974),528 P.2d 1179, 1184.
[9] State v. Raleigh, 5th Dist. No. 2007-CA-31, 2007-Ohio-5515, ¶ 50, citing State v. Faykosh, 6th Dist. No. L-01-1244, 2002-Ohio-6241;State v. Embry, 12th Dist. No. CA2003-11-110, 2004-Ohio-6324; State v.Rennick, 7th Dist. No. 02 BA 19, 2003-Ohio-2560; State v. Siegel,138 Ohio App.3d 562, 568-569, 2000-Ohio-1747, 741 N.E.2d 938.
[10] See State v. Hayes, 9th Dist. No. 04CA0105-M, 2005-Ohio-6607, ¶ 13
("To overcome the inference that the defendant did not actually ingest anything during the observation period [because the officers saw nothing ingested], the defendant must show that he did, in fact, ingest some material during the twenty-minute period.").
[11] (1992), 78 Ohio App.3d 918, 605 N.E.2d 1360. *Page 1