DECISION *Page 2 
{¶ 1} Defendant-appellant Roger Kraus challenges the trial court's decision overruling his motion to suppress. Kraus had been arrested for driving while under the influence and having improper rear lights. He had sought to suppress statements he had made to the arresting officer, as well as the results of field-sobriety and Intoxilyzer tests. The trial court overruled Kraus' motion, and, after Kraus entered pleas of no contest, found Kraus guilty of both offenses. Kraus has raised four assignments of error regarding the trial court's denial of his suppression motion.
 {¶ 2} Because the trial court properly overruled Kraus' motion, Kraus' convictions are affirmed.
 Kraus' Traffic Stop and Arrest {¶ 3} On November 3, 2006, Ohio State Highway Patrol Trooper Richard Gabel had been conducting saturation patrol in an area surrounding a DUI checkpoint. While on patrol, Gabel initiated a traffic stop of Kraus after viewing Kraus driving with a rear license-plate light that was not functioning.
 {¶ 4} After Kraus exited from his vehicle, Gabel smelled an odor of alcohol on his breath and noted that Kraus' eyes were glassy and bloodshot. Additionally, Kraus dropped several documents from his wallet without noticing while he was attempting to produce his driver's license. Gabel asked Kraus how much alcohol he had consumed, and Kraus stated "five or six beers." Gabel had Kraus sit in the front of his cruiser while he asked additional questions. In response to these questions, Kraus responded that he had felt the effects of the alcohol he had consumed and that, on a scale of zero to ten, with ten being the most impaired, he believed that he was a four to a six. *Page 3 
 {¶ 5} Gabel then had Kraus perform three field-sobriety tests. He conducted the Horizontal Gaze Nystagmus ("HGN") test behind his cruiser so that Kraus was facing away from the overhead lights on the patrol car. Kraus failed this test, exhibiting six out of six possible clues, or signs, of impairment. Gabel next conducted the one-leg-stand test. On this test, Kraus exhibited one out of four possible clues. Last, Gabel conducted the walk-and-turn test. On this test, Kraus exhibited two out of eight possible clues of impairment.
 {¶ 6} Following Kraus' performance on the field-sobriety tests, Gabel read him his Miranda rights and formally placed him under arrest. Gabel then transported Kraus to a nearby DUI checkpoint, where Kraus submitted to an Intoxilyzer test to determine his breath-alcohol content. Cincinnati Police Officer Steven Edwards administered the Intoxilyzer test. The test showed a breath-alcohol content of .142.
 Standard of Review {¶ 7} This court's review of a trial court's ruling on a suppression motion presents a mixed question of law and fact.[1] We must accept the trial court's findings of fact if they are supported by competent, credible evidence. But we review de novo the trial court's application of the relevant law to the facts.[2]
 Miranda {¶ 8} Kraus argues in his first assignment of error that the trial court erred in not suppressing the statements he had made to Trooper Gabel prior to Gabel's recitation of the Miranda warnings. Specifically, Kraus argues that the statements *Page 4 
he had made while seated in Gabel's cruiser should have been suppressed because Miranda warnings were required in that situation.
 {¶ 9} Miranda warnings must be provided when a defendant is subject to a custodial interrogation.[3] A custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."[4]
 {¶ 10} Generally, the roadside questioning of a motorist following a traffic stop does not amount to a custodial interrogation.[5] But "if a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him `in custody' for practical purposes, he is entitled to the full panoply of protections prescribed by Miranda."[6]
 {¶ 11} This court considered a similar situation in State v.Leonard.[7] A traffic stop had been initiated after the arresting officer viewed what he believed were excessively tinted windows on Leonard's vehicle. After initiating the traffic stop, the officer smelled an odor of alcohol coming from Leonard's car, saw an unopened can of beer in the vehicle, and noted that Leonard had glassy, bloodshot eyes.[8] The officer asked Leonard to sit in the front seat of his patrol car. While Leonard was seated in the patrol car, the officer asked him how much he had had to drink. Leonard responded, "[A] couple."[9]
 {¶ 12} Leonard sought to suppress the statements he had made while seated in the patrol car because he had not been read hisMiranda warnings at the time the statements were given. This court determined that Miranda warnings had not been *Page 5 
required because Leonard had not been subject to a custodial interrogation.[10] We noted that any intrusion upon Leonard had been minimal, that Leonard had not been searched or handcuffed, and that he had not been subject to a lengthy detention.[11]
 {¶ 13} Similar to Leonard, in this case any intrusion upon Kraus was minimal. Trooper Gabel had not conducted a search of Kraus' person or vehicle. He had not handcuffed Kraus or taken away his car keys. Nor was Kraus subject to a lengthy period of questioning.
 {¶ 14} Kraus was not subject to any treatment that turned an ordinary traffic stop into a custodial interrogation. And because he was not subject to a custodial interrogation, Miranda warnings were not required. The trial court properly declined to grant Kraus' motion to suppress these statements. The first assignment of error is overruled.
 Probable Cause {¶ 15} In his second assignment of error, Kraus argues that the trial court erred in overruling his motion to suppress because his arrest had not been supported by probable cause.
 {¶ 16} A warrantless arrest is supported by probable cause when "the arresting officer, at the time of the arrest, possess[es] sufficient information that would cause a reasonable and prudent person to believe that a criminal offense has been or is being committed."[12] A court must examine the totality of the circumstances when determining whether probable cause to arrest existed.[13] *Page 6 
 {¶ 17} Following our review of the record, we determine that Kraus' arrest was clearly supported by probable cause. Trooper Gabel smelled an odor of alcohol emanating from Kraus, and he noted that Kraus had glassy, bloodshot eyes. Kraus admitted to the consumption of alcohol and failed the HGN field-sobriety test. In this case, the totality of the circumstances supported Trooper Gabel's decision to arrest Kraus.
 {¶ 18} Accordingly, the second assignment of error is overruled.
 HGN Field-Sobriety Test {¶ 19} In his third assignment of error, Kraus argues that the trial court erred in failing to suppress the results of the HGN field-sobriety test. Specifically, Kraus asserts that this test was not administered in accordance with the regulations promulgated by the National Highway Traffic Safety Administration ("NHTSA"), because his performance had been affected by the flashing strobe lights atop Trooper Gabel's patrol car.
 {¶ 20} NHTSA regulations direct that a suspect should be faced away from strobe lights when the HGN test is conducted.[14] In this case, Trooper Gabel testified that he had conducted the HGN test at the rear of his patrol car, and that he had Kraus face away from the flashing strobe lights atop the car. But Kraus argues, citing the videotape of the arrest from the patrol car, that the strobe lights had reflected off nearby cars and affected Kraus' performance.
 {¶ 21} The trial court, in addition to being presented with Trooper Gabel's testimony, viewed the tape of the traffic stop from the patrol car. In denying Kraus' motion, the trial court clearly determined that Trooper Gabel had substantially complied with the NHTSA regulations and that Kraus' performance had not been *Page 7 
affected by any reflection of the lights. This finding of fact was supported by competent and credible evidence. The trial court properly overruled Kraus' motion to suppress the results of the HGN test.
 {¶ 22} Kraus' third assignment of error is overruled.
 Twenty-Minute Waiting Period {¶ 23} In his fourth assignment of error, Kraus argues that the trial court erred in failing to suppress the results of his Intoxilyzer test because the officers failed to comply with the required 20-minute waiting period before administering the breath test.
 {¶ 24} Before a breath test is administered on an Intoxilyzer machine, the machine's operational checklist requires that the testing officer observe the subject for 20 minutes.[15] The purpose of such an observation period is to ensure that the suspect does not ingest any material that may affect the results of the test.[16]
 {¶ 25} In this case, Trooper Gabel testified on direct examination that he and Kraus had arrived at the DUI checkpoint approximately 10 to 15 minutes prior to the administration of the breath test. On cross-examination, Gabel backtracked on his testimony, stating, "Honestly, I don't know how long we were there * * * We had just done a test. I don't remember exactly how long we were there before the test was taken." But Officer Edwards, who had actually conducted the breath test and operated the Intoxilyzer machine, testified that he had complied with the 20-minute observation period.
 {¶ 26} When issuing its ruling, the trial court stated that it had relied on Officer Edwards' testimony concerning the 20-minute observation period and that it *Page 8 
found that the test had been done in compliance with Ohio Department of Health regulations. The trial court's finding was supported by competent and credible evidence. Because the state demonstrated substantial compliance with the required 20-minute observation period, the trial court properly declined to suppress the results of the Intoxilyzer test.
 {¶ 27} Kraus' fourth assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
SUNDERMANN, P.J., and DINKELACKER, J., concur.
[1] State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372,797 N.E.2d 71, ¶ 8.
[2] Id.
[3] Miranda v. Arizona (1966), 384 U.S. 436, 468, 86 S.Ct. 1602.
[4] Id. at 444.
[5] Berkemer v. McCarty (1984), 468 U.S. 420, 104 S.Ct. 3138.
[6] Id.
[7] 1st Dist. No. C-060595, 2007-Ohio-3312.
[8] Id. at ¶ 5.
[9] Id. at ¶ 6.
[10] Id. at ¶ 23.
[11] Id. at ¶ 22.
[12] State v. Elmore, 111 Ohio St.3d 515, 2006-Ohio-6207,857 N.E.2d 547, ¶ 39.
[13] Id.
[14] 4 See State v. Stritch, 2nd Dist. No. 20759, 2005-Ohio-1376, ¶ 23.
[15] See State v. Booth, 1st Dist. No. C-070184,2008-Ohio-1274, ¶ 8.
[16] Id. *Page 1