[Cite as *State v. Richard*, 2011-Ohio-6631.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-110128 |
| | | TRIAL NO. 10TRC-36879B |
| Plaintiff-Appellant, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| JULIE M. RICHARD, | : | |
| Defendant-Appellee. | : | |

Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  December 23, 2011

*John P. Curp*, City Solicitor, *Charles A. Rubenstein,* Acting City Prosecutor, and *William T. Horsley*, Assistant City Prosecutor, for Plaintiff-Appellant,

*Matthew T. Ernst*, for Defendant-Appellee.

Please note:  This case has been removed from the accelerated calendar.

**DINKELACKER, Presiding Judge.**

{¶1} Defendant-appellee Julie Richard was arrested for and charged with driving under the influence of alcohol under R.C. 4511.19(A)(1)(a) and driving with a prohibited breath-alcohol content under R.C. 4511.19(A)(1)(d). The trial court granted Richard's motion to suppress the results of an Intoxilyzer test, and the state has appealed under Crim.R. 12(K). We reverse the trial court's decision granting the motion to suppress and remand the case to the trial court for further proceedings.

{¶2} The record shows that Cincinnati Police Specialist Ryan Jones stopped Richard for speeding. After having her perform field sobriety tests and take a portable breath test, he arrested her for driving under the influence of alcohol and took her to the police station.

{¶3} Specialist Jones observed Richard for 20 minutes before administering a breath test using the Intoxilyzer 5000 to ensure that she did not ingest anything. The first time he administered the breath test, the machine reported an invalid sample. Specialist Jones then waited three more minutes and administered the test again. The second test produced a valid sample that showed that Richard had a breath-alcohol level of .137 grams of alcohol per 210 liters of breath.

{¶4} Richard moved to suppress the results of the breath test. She contended that Specialist Jones had failed to follow Ohio Department of Health regulations. Specifically, she argued that the Intoxilyzer 5000 operator's manual stated that the operator should wait an additional 20 minutes after an invalid sample to exclude the possibility of mouth alcohol contaminating the sample.

{¶5}    The trial court granted the motion to suppress.  It stated that "[t]his court finds that the machine operator did not follow the operational checklist with regards to the 'invalid sample' and as such the State's proof as to the breath test is unreliable.  For that reason such result is excluded from evidence in this case."  This appeal followed.

{¶6}    In its sole assignment of error, the state contends that the trial court erred in granting Richard's motion to suppress.  The state argues that it is only required to show substantial compliance with the pertinent Ohio Department of Health regulations, not the operator's manual's recommendations.  This assignment of error is well taken.

{¶7}    Appellate review of a motion to suppress presents a mixed question of law and fact.  We must accept the trial court's findings of fact as true if competent, credible evidence supports them.  But we must independently determine whether the facts satisfy the applicable legal standard. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶8; *State v. Kraus*, 1st Dist. Nos. C-070428 and C-070429, 2008-Ohio-3965, ¶7.

{¶8}    The Ohio Supreme Court has held that courts should apply a burden-shifting analysis when determining whether the results of a breath test are admissible.  First, the defendant must challenge the admission of the test by filing a motion to suppress.  The burden then shifts to the state to show substantial compliance with Ohio Department of Health regulations.  If the state meets that burden, a rebuttable presumption arises that the test results are admissible. *Burnside*, supra, at ¶24; *State v. Booth*, 1st Dist. No. C-070184, 2008-Ohio-1274, ¶7.  Then the burden shifts back to the defendant to show that he or she "was prejudiced by anything less than strict compliance." *Burnside*, supra, at ¶24.

{¶9}    Ohio Admin. Code 3701-53-02(A)(1) lists the Intoxilyzer 5000 as an approved breath-testing instrument.  Subsection (D) of the same regulation requires law enforcement officials to follow a breath-testing machine's operational checklist when administering a breath test.  *Booth*, supra, at ¶8.

{¶10}    The operational checklist for the Intoxilyzer 5000 requires an officer to observe "subject for twenty minutes prior to testing to prevent oral intake of any material."  The purpose of this observation period is to ensure that the suspect does not ingest any material or regurgitate material internally that may affect the results of the test.  *Kraus*, supra, at ¶24; *Booth*, supra, at ¶9.  The test result should not be the result of anything other than the suspect's deep lung breath.  *Booth*, supra, at ¶9.

{¶11}    The parties do not dispute that Specialist Ryan observed Richard for 20 minutes before obtaining the first, invalid sample.  The trial court found that Specialist Ryan had not substantially complied with the requirements of Ohio Admin. Code 3701-53-02 because he had failed to observe Richard for an additional 20 minutes before obtaining the second sample.  We disagree.

{¶12}    The operating manual for the Intoxilyzer 5000 recommends waiting an additional 20 minutes after receiving an invalid sample.   But this recommendation in the manual does not rise to the level of a department of health regulation.  See *State v. Massie*, 2nd Dist. No. 2007 CA 24, 2008-Ohio-1312, ¶20; *State v. Hayes*, 9th Dist No. 04CA0105-M, 2005-Ohio-6607, ¶16.  The manual and the operational checklist do not contain the same language.

{¶13}    Specialist Ryan observed Richard for more than 20 minutes prior to the administration of the first test.  In that time, Richard did not orally ingest or regurgitate anything.  Nothing in the record suggests that the first test produced an invalid sample due to the presence of mouth alcohol.  Specialist Ryan testified that

the invalid sample was likely due to insufficient breath. He administered the second test three minutes later, and during that time Richard did not ingest anything. On the second test, the sample was valid. Under the circumstances, we hold that the police officer substantially complied with the Ohio Department of Health regulations. See *Hayes*, supra, at ¶17-18.

{¶14} Further, Richard did not present any evidence to show that she was prejudiced by the lack of strict compliance. The purpose of the observation rule is to provide evidence that the defendant did not ingest or regurgitate some material that would produce an inaccurate test result. Ingestion has to be more than hypothetically possible. Testimony from law enforcement officers that a defendant did not ingest or regurgitate anything shifts the burden to the defendant to affirmatively show that he or she did. *Booth*, supra, at ¶12. Richard failed to meet that burden.

{¶15} Consequently, we hold that the trial court erred in granting Richard's motion to suppress the results of the breath test. We sustain the state's assignment of error, and remand the case for further proceedings.

Judgment reversed and cause remanded.

**HENDON** and **CUNNINGHAM, JJ.,** concur.

Please note:
    The court has recorded its own entry this date.