[Cite as *State v. Lambert*, 2013-Ohio-3589.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-120865 |
| | | TRIAL NO. 11TRC-57873-A |
| Plaintiff-Appellant, | : | |
| vs. | : | *O P I N I O N.* |
| ROGER D. LAMBERT, | : | |
| Defendant-Appellee. | : | |


Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  August 21, 2013


*John P. Curp*, City Solicitor, *Charles A. Rubenstein*, City Prosecutor, and *Marva K. Benjamin*, Senior Assistant Prosecutor, for Plaintiff-Appellant,

*Suhre & Associates, LLC*, and *Robert Healey*, for Defendant-Appellee.


Please note:  this case has been removed from the accelerated calendar.

**FISCHER, Judge.**

{¶1} Plaintiff-appellant the city of Cincinnati appeals the trial court's judgment granting defendant-appellee Roger Lambert's motion to suppress the results of a breath-alcohol test pursuant to Lambert's arrest for operating a vehicle while under the influence of alcohol or drugs ("OVI") in violation of R.C. 4511.19(A). Because we determine that the trial court erred in suppressing the results, we reverse.

### *Factual Background and Procedural Posture*

{¶2} In November 2011, Lambert was stopped by an Ohio State Highway patrol officer after the officer observed Lambert's vehicle swerve left of center. As a result of the traffic stop, Lambert was placed under arrest for OVI. The officer then took Lambert to Cincinnati Police District One where Lambert submitted to a breath-alcohol test using an Intoxilyzer 8000 instrument. Lambert was charged, in part, with operating a motor vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a), and operating a motor vehicle with a prohibited concentration of alcohol in his breath in violation of R.C. 4511.19(A)(1)(d).

{¶3} Lambert filed a motion to suppress all evidence stemming from his arrest, including the results of his breath-alcohol test. Pertinent to this appeal, Lambert argued in his motion to suppress that his test results were inadmissible because: (1) the dry gas control test for the Intoxilyzer 8000 instrument on which he was tested was not performed prior to and subsequent to every subject test, and (2) an instrument certification was not made when the instrument was placed in service. The trial court conducted a lengthy hearing on the motion, and, in addition to the

arresting officer's testimony, Michael Quinn, an employee of the Ohio Department of Health ("ODH"), and Mary Martin, a program administrator for ODH, also testified.

{¶4} Quinn testified that he had conducted a certification of the instrument used on Lambert on June 21, 2011, in Columbus, and that he had installed and had placed the instrument in service on June 23, 2011, after the instrument had passed an additional diagnostic test at District One. Martin testified in regards to the instrument testing procedure. She testified that the instrument begins with an air blank, then does a diagnostic, another air blank, the first dry gas control, another air blank, the first subject sample, two more air blanks, the second subject sample, another air blank, the second dry gas control, and finally an air blank. She also testified that the ODH recently changed its terminology to "subject sample" instead of "subject test."

{¶5} The trial court concluded that the officer had had probable cause to arrest Lambert for OVI, but the trial court suppressed the results of the breath-alcohol test for failure to comply with ODH regulations. In suppressing the results, the trial court determined that the dry gas control test for the Intoxilyzer 8000 instrument had not been performed prior to and subsequent to each subject test as required by Ohio Admin.Code 3701-53-04. The trial court also determined that the instrument certification had not been done in accordance with Ohio Admin.Code 3701-53-04 because Quinn had "calibrated" the instrument in Columbus, and because "no calibration process" had occurred at the time the instrument had been installed at District One.

{¶6} The city now appeals, arguing that the trial court erred by suppressing Lambert's breath-alcohol test results.

### Standard of Review

{¶7} Appellate review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. We must accept the trial court's findings of fact if they are supported by competent and credible evidence. But we review de novo the trial court's application of the relevant law to those facts. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

{¶8} When a defendant challenges the admission of a breath-alcohol test by filing a motion to suppress, courts apply a burden-shifting analysis. The state must show substantial compliance with ODH regulations, and if the state meets that burden, a rebuttable presumption arises that the test results are admissible. *Burnside* at ¶ 24; *State v. Booth*, 1st Dist. Hamilton No. C-070184, 2008-Ohio-1274, ¶ 7. Then, the burden shifts back to the defendant to show that he or she "was prejudiced by anything less than strict compliance." *Burnside* at ¶ 24.

### Certification of the Intoxilyzer 8000

{¶9} In its first assignment of error, the city argues that the trial court erred when it suppressed the results of Lambert's breath test on the ground that the certification of the Intoxilyzer 8000 instrument must be done at the time and specific location where the instrument is installed and placed in service in accordance with Ohio Admin.Code 3701-53-04.

{¶10} Ohio Admin.Code 3701-53-04(D) provides that "[a]n instrument check or certification shall be made * * * when a new evidential breath testing instrument is placed in service or when the instrument is returned after service or repairs, before the instrument is used to test subjects."

4

{¶11} In *State v. Logeman*, 1st Dist. Hamilton No. C-070109, 2007-Ohio-6340, this court interpreted nearly identical language in former Ohio Admin.Code 3701-53-04(B), which stated "[a]n instrument check shall be made * * * when a new evidential breath testing instrument is placed in service * * *, before the instrument is used to test subjects." This court determined in *Logeman* that "[t]he language of Ohio Admin.Code 3701-53-04(B) itself indicates that compliance may be demonstrated upon a showing that the machine had been checked 'before the instrument is used to test subjects.' It is therefore apparent that the requirement regarding initial testing * * * is to ensure calibration before the machine is used for evidentiary purposes." *Id.* at ¶ 22.

{¶12} In this case, the plain language of Ohio Admin.Code 3701-53-04(D) does not indicate that the certification must be performed at the location and time of the installation, as the trial court held. Moreover, similar to the code section at issue in *Logeman* where compliance could be demonstrated by showing that the instrument was checked before testing, Ohio Admin.Code 3701-53-04(D) requires instrument certification to be performed on new, serviced, or repaired instruments before the instruments are used for testing.

{¶13} The instrument used to test Lambert was certified in June 2011, prior to its use on Lambert in November 2011. Although Quinn conducted a certification of the instrument in Columbus, when he installed and placed the instrument in service two days later at District One, the instrument passed an additional diagnostic test to ensure that it was working properly. No evidence was presented to indicate that the machine was serviced or repaired prior to November 2011. Therefore, we determine that the city has established, at a minimum, substantial compliance with

5

Ohio Admin.Code 3701-53-04(D), and Lambert does not argue that he was prejudiced by anything less than strict compliance. *See Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶ 8. Therefore, the trial court erred in granting Lambert's motion to suppress on this basis.

{¶14} Consequently, we sustain the city's first assignment of error.

### *Dry Gas Control Test*

{¶15} The city argues that the trial court erred when it suppressed Lambert's test results based upon the failure to conduct a dry gas control test prior to and after each breath sample.

{¶16} Ohio Admin.Code 3701-53-04(B) provides that the Intoxilyzer 8000 instrument must "automatically perform a dry gas control test before and after every subject test * * *." This court recently held in *Cincinnati v. Nicholson*, 1st Dist. Hamilton No. C-120332, 2013-Ohio-708, ¶ 11, that "the plain language of Ohio Admin.Code 3701-53-04(B) requires a dry gas control test before a subject's first breath sample and after the subject's second breath sample, but not in between the two samples." In reaching this conclusion, this court agreed with the reasoning of the Twelfth Appellate District that "there is a single 'subject test' that is comprised of two different breath samples." *Nicholson* at ¶ 10, relying on *State v. Kormos*, 2012-Ohio-3128, 974 N.E.2d 725, ¶ 16 (12th Dist.).

{¶17} Lambert nevertheless argues that *Nicholson* is distinguishable because the court in that case did not have the benefit of the Intoxilyzer 8000 manual published by the ODH, which uses labels such as "subject test one," "subject test two," and "second subject test." Assuming that the *Nicholson* court did not have the Intoxilyzer 8000 manual as part of its record, which is not clear from the decision

6

itself, the *Nicholson* court nevertheless considered ODH's use of the labels "Subject Test 1" and "Subject Test 2" as they were used in the "Subject Test Report." Moreover, Martin testified that ODH now uses the label "sample" instead of "test" on its test reports, consistent with our decision in *Nicholson*. Thus, we cannot distinguish *Nicholson* on this basis.

{¶18} Lambert further argues that *Nicholson* is distinguishable because the plain language of Ohio Admin.Code 3701-53-04(B) provides that the dry gas control test must be performed before the "subject test," and Martin testified that the Intoxilyzer 8000 procedure begins with an air blank and a diagnostic, and not a dry gas control test. Lambert relies on the definition of "subject test" in *Nicholson* where the court determined that a "subject test" means running the Intoxilyzer 8000 instrument on a single subject. *Nicholson* at ¶ 10. Thus, Lambert argues that the evidence showed that the dry gas control test was not the first step in his entire testing procedure, or "subject test," as required by Ohio Admin.Code 3701-53-04(B).

{¶19} Lambert's argument ignores that the same testing procedure was used for the instrument in *Nicholson* as was used in this case. Moreover, in *Nicholson*, this court determined that a "subject test" is "comprised of two different breath samples." *Id.* Lambert does not dispute that the dry gas control test was performed before and after his two different breath samples. Thus, we cannot distinguish *Nicholson* on this basis either. We determine that the city substantially complied with Ohio Admin.Code 3701-53-04(B), and that Lambert fails to argue or show that he was prejudiced by anything less than strict compliance. *See Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶ 8. Thus, the trial court erred in granting Lambert's motion to suppress on this basis as well.

{¶20}   We sustain the city's second assignment of error.

### *Conclusion*

{¶21}   Because we sustain both of the city's assignments of error, we reverse the judgment of the trial court granting Lambert's motion to suppress.   The cause is remanded for further proceedings consistent with this opinion and the law.

Judgment reversed and cause remanded.

**HILDEBRANDT, P.J.,** and **DINKELACKER, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.