RICHLIN, Plaintiff-Appellee, v. GOODING AMUSEMENT COMPANY, INC., Defendant-Appellant.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 25131.   Decided December 1, 1960.

*Mr. A. H. Dudnik, Mr. M. I. Nurenberg* and *Mr. John H. Bever,* for plaintiff-appellee.

*Messrs. McNeal & Schick, Mr. John R. Kistner, Mr. Bernard H. Niehaus, Jr., Mr. Clifford E. Rader, Jr., Mr. Harley J. McNeal* and *Mr. John R. Kistner,* of counsel, for defendant-appellant.

For further history see *Omnibus Index* in bound volume.

SKEEL, J. This appeal comes to this court on questions of law from a judgment entered for the plaintiff upon a verdict returned by a jury. The plaintiff claims to have suffered severe injury as a proximate result of the negligence of one of defendant's servants while acting in the course of his employment.

About 2:00 A. M. of July 31, 1955, the plaintiff was a passenger in the automobile of her fiance, William Hayden. They had attended a party at the house of a friend on Electric Drive in the City of Bay Village. They left the party at about the time indicated, driving west on Electric Drive to Bassett Road, then south on Bassett Road to Detroit Road. They drove east on Detroit Road to the place of the accident which occurred at the intersection of Detroit Road with Wagar Road in the City of Rocky River. The total distance driven was slightly

over seven miles. The accident occurred about 2:25 A. M. so that the seven miles was driven in not less than twenty minutes.

The defendant, in the carnival business, had in its employ a "Ride Helper," Edgar Kitchen, age twenty-eight, of Elkins, West Virginia. The defendant owned or possessed carnival equipment which on July 30th was on what the witnesses called a "Fairground" located about three blocks east of Wagar Road on Detroit Road. Kitchen started to work at the carnival on July 30th at about 11:00 A. M. At the close of carnival activities, at about eleven-thirty that night, the carnival equipment was disassembled preparatory to moving at least some part of it to some place in Indiana. Kitchen participated in this work and when the defendant's tractor-trailer was loaded, he became the truck driver. He was not familiar with the route to be taken, and another employee indicated or marked the way to go on a piece of paper. He was told to go three (or four) blocks west on Detroit Road, turn south (left hand turn) on Wagar Road to U. S. Route 20. When he approached Wagar Road, after counting the blocks, he proceeded along and went 100 feet from the intersection of Wagar Road with Detroit Road, he noticed that the traffic light at the intersection of Detroit and Wagar Roads was red. He was then driving twenty miles per hour. He started to slow down and when sixty feet from the intersection, the light changed to green. He proceeded to the cross-walk and when near the traffic light, started to execute a left hand turn to go south on Wagar Road. The manner of making such turn and the point from which the turn was commenced; the distance covered by the tractor-trailer into or toward Wagar Road; the point where the tractor entered or was entering Wagar Road to the south; whether Kitchen saw the automobile in which plaintiff was a passenger some distance to the west, or whether he first observed it as it proceeded in an easterly direction into the intersection and was within twenty feet of the tractor just before the collision (as appears in the police report); and the speed at which the vehicle in which plaintiff was a passenger approached the intersection and its position on Detroit Road as it proceeded east just before and at the time of the collision are all matters that are in considerable dispute as shown by a careful reading of the bill

of exceptions. A collision occurred between the two vehicles and plaintiff was severely injured.

From a judgment entered for the, plaintiff, the defendant claims the following errors:

"1. That the court erred in its charge to the jury with respect to Section 4511.36, Revised Code (left-hand turn rule).

"2. That there are minor errors in the charge, the cumulative effect of which is sufficient to warrant reversal.

"3. That the court should have granted defendant's motion for a directed verdict.

"4. That the court erred in refusing to submit to the jury the issue of contributory negligence of plaintiff.

"5. That the verdict is contrary to law and against the weight of the evidence.

"6. That the verdict is excessive and was given under the influence of passion and prejudice.

"7. That the court erred in permitting the plaintiff to introduce testimony relative to a lessening of the plaintiff's sense of smell and taste when there were no allegations in the Petition pertaining to such claims; and permitted counsel to argue a 'brain injury' when there was no testimony concerning any so-called 'brain injury.'

"8. That the court erred in refusing to admit in evidence the police report and the statements of Edgar Kitchen and Robert Gehring after issues were raised concerning the facts found by Lt. Nordstrom when he arrived at the scene of the accident.

"9. That the court erred in permitting counsel for the plaintiff to ask hypothetical questions which were not based upon testimony which was in evidence; and permitted counsel for plaintiff to ask questions seeking opinions in answers thereto which were speculative and conjectural in nature.

"10. That the court erred in not granting a new trial on the basis of newly discovered evidence developed by the defendant, which affected the substantial rights of the parties.

"11. That the court erred in emphasizing and repeating verbatim and by reference plaintiff's allegations of negligence against the defendant as set forth in the petition."

The charge of the court, explaining the provisions of Section 4511.36, Revised Code (left-hand turn), appears in sev-

eral places. Each time the specific requirements of entering the intersection to the right of and next to the centerline of the street upon which the vehicle is traveling when proceeding into the intersection and to proceed to the right of the centerline of the street being entered in making the left-hand turn were carefully explained.

The sentence added by the amendment to this section, effective September 11, 1951, which reads: "Whenever practicable the left turn shall be made in that portion of the intersection to the left of the center of the intersection * * *" does not change the basic requirements for making a left-hand turn at a street intersection. The amendment of 1951 must have intended to make it perfectly clear that "cutting the corner" as distinguished from the earlier requirement to go beyond the center of the intersection before turning to the left, was intended. The failure of the court to include the sentence just quoted each time he read Section 4511.36, Revised Code, in his charge had no prejudicial effect on the defendant's case. The rule was properly stated by the court in its charge on this question.

The second claim of error is that the cumulative effect of a number of minor errors in the court's general charge to the jury (no one of which is claimed to be of sufficient moment to be prejudicially detrimental to defendant's case) when taken together prejudiced the right of the defendant. We find no substance to this claim. An error committed by the court in its charge to the jury is either prejudicial or it is not. There is no legal way to add up the separate effects of such claims so that taken together, they may be considered as affecting prejudicially the rights of a contending party. Each claim of error must be considered as standing or falling on its own facts unassociated with others on different subjects. This claim of the defendant is overruled.

It is claimed in the defendant's third assignment of error that the court should have granted defendant's motion for a directed verdict. The defendant proceeded to put on its case after its motion for a directed verdict had been overruled. We do not find that the motion was revived at the time both sides rested their respective cases. It requires no citation of au-

thority to show that such claim of error cannot now be considered. But even if the motion had been interposed, this claim of error would have had to be overruled.

The assertion that the defendant's negligence was a proximate cause of injuries suffered by the plaintiff is supported in this record by credible evidence and questions of fact were therefore present for the consideration of the jury. This claim of error is overruled.

The refusal of the court to submit to the jury the issue of contributory negligence on the part of the plaintiff, as presented by defendant in three or four of its written requests for instructions before argument, did not constitute prejudicial error. The plaintiff was a passenger in the automobile which collided with defendant's tractor-trailer while its driver was attempting to make a left turn in front of and across the path of the automobile in which she was riding. The law seems to be well settled that a passenger owes no duty to assist in driving the automobile in which she is riding as a passenger. Only in case of a danger unknown to the driver, which lack of knowledge is known to the passenger who has, in fact, observed such danger and the circumstances are such that a reasonable person would speak out, does the law place a duty on the passenger to point out the danger if time permits. Interferring with or confusing the driver by warnings of observable conditions many times contributes to disaster. In the case of *Bush* v. *Harvey Transfer Co.*, 146 Ohio St., 657 (67 N. E. 2d, 851), at page 670 of the opinion, Hart, J., says:

"As a general rule, one who is merely a guest in an automobile may rely to some extent, though not absolutely, upon the driver to exercise reasonable care to avoid danger, and, in the absence of unusual circumstances, a guest is not guilty of contributory negligence if he relies upon the skill and ability of the driver and does not take active steps to see that the vehicle is properly operated. Ordinarily, it is not the province or even proper for a guest to warn or interfere with the driver until he discovers that the driver is unskillful, reckless, or has failed to perceive impending danger. *Lehigh Valley Rd. Co.* v. *Emens*, 231 F. 636; *Clarke* v. *Connecticut Co.*, 83 Conn, 219, 76 A. 523."

In the case of *Golamb* v. *Layton*, 154 Ohio St., 305, 95 N. E.

2d, 681, the court, dealing with this subject, said in the first paragraph of the syllabus:

"1. A passenger riding in one of two automobiles about to collide is under no duty to warn his driver or to attempt to control such driver's operation of the vehicle, where it appears that everything the passenger could see was equally visible and known to the driver, that there was nothing to indicate to the passenger the danger of a collision until it was imminent, and that there was nothing the passenger could then do to avoid the result."

The evidence which is stressed by the defendant as indicating that the plaintiff did not exercise due care for her own safety as a passenger is first, her alleged knowledge that the driver had been drinking alcoholic beverages and second, that he was driving at an excessive speed.

There is no evidence in the record that even suggests that the driver of the automobile in which plaintiff was a passenger was under the influence of intoxicating liquor in the slightest degree. His testimony, supported by that of the plaintiff, is to the effect that the beer consumed over a period of two hours or more, followed by a midnight supper with coffee, with no indication of the alcoholic content of the beer, and without some direct evidence to support the claim that the driver was affected by the consumption of beer at the time of the accident, does not give the slightest support to the defendant's claim that the plaintiff was negligent in becoming a passenger with a driver under such circumstances. The driver was taken to the hospital by the police immediately after the accident and there is no evidence that either the police or the hospital authorities made any reference to the fact that the driver had been drinking. The plaintiff testified that the driver drove at a reasonable speed. The driver testified he was driving forty to forty-five miles per hour as he approached the intersection of Wagar Road with Detroit Road. When he first noted the defendant's truck, it was on the north side of Detroit Road east of the intersection. A motorcycle rider called by the defendant, testified that between twelve and thirteen seconds before the collision, the Ford passed him going sixty-five to seventy miles per hour. He later said he might have been mistaken about the speed and it might

have been fifty to fifty-five miles per hour. This witness (who was on his way home at 2:30 A. M. and did not know where he had been) said that the point where the Ford passed him was about eight hundred feet west of the intersection of Wagar Road with Detroit Road. He said that after the Ford passed him, he paid no attention to it. This being his direct testimony, it does not support the defendant's claim that just before the accident some seven or eight hundred feet beyond the point of this witness's observation, plaintiff's driver was driving sixty-five to seventy miles per hour at the point of the accident.

The defendant's expert also gave some estimates of speed, based on the facts presented in hypothetical questions. One of the facts depended upon was tire skid marks which were alleged to have extended eighty feet from their beginning to the point of the collision. The police officer who measured the skid marks and gave the eighty foot measurement said they began at a point three feet north of the south curb of Detroit Road and ended in the middle of Wagar Road to the east and about even with a point where the extension of the south curb would intersect the center of Wagar Road. This officer stated that he could not see the skid marks in the dark at 2:30 A. M., but that he noted the place where the Ford was standing and when he returned at daylight, he noted that the skid marks began at a point where the Ford had been standing and extended west to a distance of eighty feet. Early in the morning of July 31st (after daylight) a police officer from the City of Lakewood was requested by the Rocky River Police Department to take pictures of the vehicles involved in the accident and of the scene where it took place. Two pictures of Detroit Road, looking easterly, were taken from a point west of Wagar Road. Each picture shows tire skid marks beginning at an estimated fifty feet west of the intersection, the most southerly tire mark being about eleven feet north of the south curb of Detroit Road, the skid marks ending well past the center line of Wagar Road at a point eight or nine feet north of what would be the extended south curb line of Detroit Road over Wagar Road. There is a large dark spot showing on the pavement at the east end of the skid marks. If this were the point of the collision, the tractor was still almost entirely within the intersection when the

accident occurred in complete contradiction to the defendant's claims on that point. There were no skid marks shown in these pictures (introduced by the defendant) other than the ones just described. The policeman who made the measurements must have been completely in error on the location of the skid marks as demonstrated by these photographs. One of the factors upon which the expert based his estimate of speed was, therefore, non-existent. There is one other part of the expert's testimony on speed that should be mentioned. He testified that the automobile in which plaintiff was a passenger was going forty miles an hour when it collided with the tractor. This evidence was based on the assumed physical fact that the truck weighed 16,000 lbs. and the Ford 4,000 lbs., and that when they collided, they both stopped at the point of the collision, neither being forced back by the momentum of the other. The expert testified that upon these physical facts where it is shown that the truck was moving ten miles an hour, the Ford must have been going forty miles per hour to stand off the momentum of the truck. This witness testified:

"Knowing the speed of the truck at the time of the collision and knowing that in the collision neither vehicle pushed the other *in the direction from which it came*, from the principles of mechanics, we know that the momentum of the two vehicles is very closely the same. (Emphasis added.)

"If the momentum of the two vehicles are the same, then their speed will be inversely proportionate to their weights. And inasmuch that the weight of the truck was approximately four times that of the car, to avoid one vehicle pushing the other during the collision, the speed of the car would have to be approximately four times that of the truck."

The only trouble with these "principles of momentum" is that the truck was heading south or almost at right angles with the Ford which was heading east so that momentum of the one did not push against or oppose the momentum of the other. Giving consideration to the evidence of speed presented by the defendant as charged against the driver of the automobile in which plaintiff was riding, we find no circumstance under which she could be said to have been required to warn the driver of dangers portrayed by this evidence or that an issue of fact was

508

presented as to the defendant's claim of negligence on her part proximately contributing to her injuries. Speed is a relative matter. We adhere to the quotation in defendant's brief from an opinion of this court in *City of East Cleveland* v. *Ferell*, 107 Ohio App., 256, 145 N. E. 2d, 134, where it is said:

"One of the greatest dangers on the public highway, next to driving a motor vehicle while under the influence of intoxicating liquor, is driving in excess of a reasonable speed."

The circumstances surrounding the time and place of an act said to be speeding is the test of the reasonableness of the speed at which a motor vehicle may be operated. Much is said here about the admission of the driver of the automobile in which plaintiff was a passenger that he was driving at a rate exceeding the published prima facie lawful rate of thirty-five miles per hour. It might be pertinent to call attention to the fact that in the very next session of the legislature, after this accident, Section 4511.21, Revised Code, was amended to provide:

"* * * It shall be prima facie lawful for the operator of a motor vehicle, trackless trolley, or street car to operate the same at a speed not exceeding the following:

"* * *

"(F) Fifty miles per hour on state routes within municipal corporations outside urban districts unless a lower prima facie speed is established as further provided by this section."

Detroit Road is a state route and there is no evidence in the record to show that at the time and place a speed of forty to forty-five miles per hour was unreasonable.

We, therefore, find that the court ruled correctly in refusing to submit the alleged issue of contributory negligence of the plaintiff to the jury.

We find against the defendant on its claims that the verdict is contrary to law and against the weight of the evidence or that the court erred as claimed in assignments of error Nos. 7, 8, 9 and 11.

This leaves for consideration defendant's claims that the verdict is excessive, influenced by passion and prejudice, and that the trial court was in error in not granting a new trial on the basis of newly discovered evidence. The claim of newly

discovered evidence was based on the affidavit of an automobile driver who, it was claimed, was driving east on Detroit Road at 2:30 A. M. on July 31st, when the Ford in which plaintiff was riding passed him 1,000 feet west of the intersection of Wagar Road at a speed which he estimated to be from sixty-five to seventy miles per hour. Whether this would be the purport of the evidence presented by affidavit attached to the motion for new trial upon the authority of Section 2321.20, Revised Code, is not in the record. The hearing on the motion for new trial and the evidence, if any, as presented on the motion either by affidavit, deposition or otherwise, has not been brought to this court by a bill of exceptions. The case of *Willett, Admr.,* v. *New York Central Rd. Co.,* 73 Ohio App., 59, 54 N. E. 2d, 317, clearly holds that a bill of exceptions is necessary to bring upon the record the evidence presented by affidavit or otherwise on a motion for new trial. The syllabus provides:

"1. Affidavits, filed with the clerk in support of a motion for a new trial on the ground of misconduct of jurors, as authorized by Section 11579, General Code (Section 2321.20, Revised Code), are not a part of the record and cannot be considered on appeal in the absence of a bill of exceptions incorporating them.

"2. Whether affidavits filed with the clerk are a part of the record depends upon the purpose for which they are filed as authorized by law.

"3. Under the statutes of Ohio authorizing the use of affidavits as a method of proving an issue of fact under certain circumstances, the affidavits are not part of the record, even though filed with the clerk."

And beginning on page 60 of the opinion, it is said:

"It seems clear that the mere filing of certain affidavits with the clerk makes them a part of the record for the intended purpose. Other affidavits, though filed, are not a part of the record, unless made so by a bill of exceptions. Affidavits of the latter sort are the ones that, in most cases, have engaged the attention of the courts. The difference in the effect of the filing seems to result from the original purpose of the filing of such affidavits or the subsequent use sought to be made of them."

* * *

And at page 62 of the opinion, it is stated:

510

"Without attempting to catalogue all types of affidavits, it seems safe to say that the general rule is that whenever the sole office or purpose of the affirmations contained in an affidavit is to prove or disprove an issue of fact, such affidavit falls within the rule that evidence is no part of the record unless made so by a bill of exceptions.

"Where, however, such affidavit serves some other purpose, such as an affidavit for publication, an affidavit to secure the issuance of an attachment, or some other process by the clerk, or where it takes the place of a pleading, it is a part of the record for what it purports to be, regardless of the truth of its affirmations."

See also *Garner* v. *White*, 23 Ohio St., 192; *Sleet* v. *Williams*, 21 Ohio St., 82; *State* v. *Grambo*, 82 Ohio App., 473; *Bailey* v. *Progressive Motor Sales*, 101 Ohio App., 173.

But even if the question were properly before us, we would affirm the action of the trial court. In order to disturb the decision of the court in overruling defendant's motion for new trial on the grounds of newly discovered evidence, we would be compelled to find that the trial court had abused its discretion. *Taylor* v. *Ross*, 150 Ohio St., 448, 83 N. E. 2d, 222. The record does not support such a conclusion. The affiant places the point where he was passed by the driver of the automobile in which plaintiff was a passenger on Detroit Road at about 1,000 feet west of Wagar Road. The motorcycle driver, whose evidence has heretofore been considered, said that he was 800 or 900 feet from said intersection when the Ford involved in the accident passed him. The affiant made no mention of the motorcycle. The affiant also said that the traffic light at Wagar and Detroit turned to red about the time or moments before the Ford reached the intersection. The driver of defendant's truck, however, said that the traffic light was red when he was 100 feet east of the intersection. He was then traveling twenty miles per hour. He started to slow down and when sixty feet from the intersection, the light turned green. He continued to slow down until he got to the intersection where he estimated his speed at ten miles per hour. He then turned left without stopping and proceeded not more than twenty or at the most thirty feet to the south when the collision occurred. In other

words, from his testimony, the light had been green only six or seven seconds before the accident. This evidence is in direct conflict with that of the affiant and would challenge the credibility of both witnesses. It is also evident that the evidence of the affiant would be cumulative.

From a careful reading of the entire record and giving consideration to the affidavit and the circumstances surrounding the manner in which it was injected into the case, we must conclude that there is no reasonable probability that such additional evidence, if received upon retrial, would change the result obtained in the first trial.

Much of the evidence in this case calls for the opinion of witnesses as to distances from given points, from or between moving motor vehicles, and the speeds at which such vehicles were traveling at designated times and places. The general pattern of the case is that the plaintiff was a passenger in an automobile being driven easterly on Detroit Road and was approaching the intersection of Detroit Road with Wagar Road. The traffic light at the intersection was green for east and west traffic. The defendant's truck driver was driving his employer's tractor-trailer west on Detroit Road. He admittedly had little experience in handling a 14,000 lbs. tractor-trailer forty-two feet long and was completely unfamiliar with the territory. When he reached the intersection of Wagar Road, he made a left turn across the line of travel of the Ford, then clearly within his view, and a collision occurred. His movement, if untimely, created the danger. We quote from the case of *Willard* v. *Fast*, 75 Ohio App., 225, 61 N. E. 2d, 807, in which the court said on page 229:

"If it is countenanced that negligence of excessive speed can be proved by a litigant's testimony to the effect that he looked when he was 100 to 125 feet from an intersection, and did not see anyone approaching from his right and estimated by mathematical computation that he would arrive at an intersection before anyone on his right, travelling in a 'lawful manner,' could, a dangerous precedent is approved. Few men and fewer women are good judges of relative speeds and distances. Sight is far from being infallible as human experience teaches. Let us assume, as is here claimed, that the driver on

the right, who would have the statutory preferential right if he were approaching in a lawful manner, is actually approaching in an unlawful manner. How is the unfavored motorist to learn that fact if he looks but once when he is 100 to 125 feet distant, but is thereafter concerned only with travel to his left, and proceeds serenely forward with undiminished speed into the intersection and the path of the oncoming car? The answer is of course by sad experience rather than by the light of experience of the past.''

This case parallels, in part, the facts in the case now under consideration.

The amount of the judgment is indeed substantial. A careful reading of the medical evidence shows serious injuries and an admitted medical expense to the time of trial in the neighborhood of forty-two hundred dollars. What the future holds for the plaintiff is, of course, not a matter of mathematical certainty but with the need of continued dental care, involving considerable expense, the probability of further surgical care becoming necessary, the prospect of continuing through life with scars on her face, and other disabilities of a permanent nature, when considered together with her medical history of severe pains and mental shock, a substantial judgment is justified. In considering the amount of a judgment in a negligence case, the reduced value of the dollar must be considered if comparisons are to be made with verdicts of former years in like cases. However, it is the studied judgment of this court that a reduction in the amount of the judgment by a remittitur of $22,500, reducing the judgment to $102,500 would represent substantial justice in the case. We hold, however, that the judgment entered on the verdict of the jury was not induced by passion or prejudice.

A remittitur of $22,500 is, therefore, ordered, which, if accepted by the plaintiff within ten days from notice of this decision, the judgment will be reduced to $102,500 and as modified affirmed. Otherwise, the judgment will be reversed as excessive and the cause remanded for further proceedings.

HURD, P. J., KOVACHY, J., concur.