[Cite as *State v. Stadelman*, 2013-Ohio-5035.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-130138 |
| | | TRIAL NO. 12TRC-49692 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| RYAN STADELMANN, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  November 15, 2013


*John P. Curp*, City Solicitor, *Charles Rubenstein*, City Prosecutor, and *Christopher Liu*, Assistant City Prosecutor, for Plaintiff-Appellee,

*David Hoffmann*, for Defendant-Appellant.


Please note:  this case has been removed from the accelerated calendar.

**DINKELACKER, Presiding Judge.**

{¶1} In one assignment of error, defendant-appellant Ryan Stadelmann claims that the trial court erred when it denied his motion to suppress prior to his pleading no contest to operating a vehicle while under the influence of alcohol, in violation of R.C. 4511.19(A)(1)(d). The gravamen of his argument below was that his vehicle was improperly stopped on the night of his arrest. We affirm.

{¶2} Stadelmann was traveling on Drake Road when he made a "wide" left turn onto Madison Road. When turning, he turned from the lane immediately left of center on Drake into the far right lane on Madison. Thomas Bloomberg, a sergeant with the Ohio State Highway Patrol, observed the turn and believed it to be a violation of R.C. 4511.36, the statute regulating turns at intersections. The statute requires that,

> [a]t any intersection where traffic is permitted to move in both directions on each roadway entering the intersection, an approach for a left turn shall be made in that portion of the right half of the roadway nearest the center line thereof and by passing to the right of such center line where it enters the intersection and **after entering the intersection the left turn shall be made so as to leave the intersection to the right of the center line of the roadway being entered**.

(Emphasis added.) R.C. 4511.36(A)(2).

{¶3} The portion of the statute relevant to our analysis seems to allow for two interpretations. First, and more likely, it means that a driver must turn into the lane closest to the center line when making a left turn onto a two-way street. In that case, Stadelmann's turn into the curb lane was a violation. Alternatively, the statute could simply mean that one must complete the turn without driving left-of-center—i.e. into

2

oncoming traffic. This reading seems less likely as such operation would be regulated by other portions of the Revised Code. *See* R.C. 4511.25.

{¶4} But resolution of this case does not require that we answer this question. The question we must answer is whether Sergeant Bloomberg's belief that Stadelmann violated R.C. 4511.36 was reasonable. The Fifth Appellate District recently held that

> [w]here a statue is vague or ambiguous, or requires judicial construction to
> determine its scope of meaning, exceptional circumstances exist which
> permit courts to extend the good faith exception to the exclusionary rule to
> not only mistakes of fact but also mistakes of law.

*State v. Reedy*, 5th Dist. Perry No. 12-CA-1, 2012-Ohio-4899, ¶ 19, citing *State v. Greer*, 114 Ohio App.3d 299, 303, 683 N.E.2d 82 (2d Dist.1996). This court has reached a similar conclusion, noting that "reasonable suspicions can exist even if the officer misunderstands the law that the driver is allegedly violating." *State v. Burnett*, 1st Dist. Hamilton Nos. C-110565, C-110566, and C-110567, 2012-Ohio-1631, ¶ 9, citing *State v. Leonard*, 1st Dist. Hamilton No. C-060595, 2007-Ohio-3312; *State v. Cronin*, 1st Dist. Hamilton No. C-100266, 2011-Ohio-1479. Thus, the test is whether an objectively reasonable officer could have concluded from Stadelmann's wide turn that he might have been violating a traffic law. *Burnett* at ¶ 9, citing *Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, 850 N.E.2d 698, ¶ 15. And that is what we have in this case.

{¶5} The dissent argues that the statute is not only unambiguous, but that its plain meaning leaves no doubt that Stadelmann did not violate it. In so arguing, it cites a 1960 automobile accident case from the Eighth Appellate District, *Richlin v. Gooding Amusement Co.*, 113 Ohio App. 99, 170 N.E.2d 505 (8th Dist.1960), for the proposition that the purpose of the language at issue was to make it "perfectly clear" that the

General Assembly intended to prohibit "cutting the corner" of the intersection. *Id.* at 103.

{¶6} The problem with relying on *Richlin* is that the facts and the court's analysis do not contemplate the issues in this case. In *Richlin*, the two vehicles were approaching each other from opposite directions on the same street when one vehicle turned in front of the other. *Id.* at 100-101. The specific question of how a turn is properly completed onto an intersecting roadway was not at issue.

{¶7} The appellant in *Richlin* had raised the issue of whether the jury had been properly instructed on the duties of a driver under R.C. 4511.36. In addressing a 1951 amendment to that statute, the court noted that the amendment did not "change the basic requirements for making a left-hand turn at a street intersection." *Id.* The "basic requirements" the court referred to, and about which the jury in the case had been properly instructed, were that a vehicle must

> enter the intersection to the right of and next to the centerline of the
> street upon which it is traveling when proceeding into the intersection
> **and proceed to the right of the centerline of the street being**
> **entered** in making the left-hand turn[.]

(Emphasis added.) *Id.* at 102. Far from demonstrating that Stadelmann's turn was inarguably proper under the statute, the decision in *Richlin* could actually support Sergeant Bloomberg's interpretation of R.C. 4511.36.

{¶8} In a footnote, the dissent also makes reference to R.C. 4511.36(A)(3) for the proposition that, if the General Assembly had intended for left turns to be completed in the manner that Sergeant Bloomberg understood, it knew how to so indicate. Indeed, that provision references making a turn into the "left-hand lane of the roadway being entered lawfully available to traffic moving in that lane." But R.C.

4511.36(A)(3) refers to intersections involving a one-way street. Such a roadway would have no centerline. Therefore, the General Assembly could only speak in terms of the "left-hand lane" in order to accommodate turning onto a one-way street. So, far from indicating that Sergeant Bloomberg was entirely off base, R.C. 4511.36(A)(3) further demonstrates the intent of the General Assembly that motorists should complete left turns in the left-most lane available.

{¶9} It is worth noting that even the Ohio Department of Public Safety agrees with this reading. In its manual *Digest of Ohio Motor Vehicle Laws*—the recommended study guide for anyone seeking to take the driver's license examination—a driver is instructed that "[t]he turn should be made into the lane on the right half of the street nearest the center line." *Digest of Ohio Motor Vehicle Laws*, http://bmv.ohio.gov/pdf_forms/HSY-7607.pdf, 36 (accessed November 5, 2013). The diagrams used to illustrate proper left-hand turns all make clear that a turn must be completed into the lane just right of center, and that the driver may change lanes to the right thereafter. *Id.* at 37.

{¶10} As the Ohio Supreme Court has noted, members of law enforcement are not taking the bar examination every time they stop a motorist. *Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, 850 N.E.2d 698, at ¶ 15. Under the facts of this case, Sergeant Bloomberg believed that the manner in which Stadelmann executed his turn violated R.C. 4511.36. The language of the statute lends itself to that interpretation, and makes Bloomberg's belief objectively reasonable. He was not required to "correctly predict that a conviction will result." *Id.* Therefore, the traffic stop was proper, and the trial court properly denied Stadelmann's motion to suppress.

{¶11} Having considered his argument and the record, we overrule Stadelmann's sole assignment of error, and affirm the judgment of the trial court.

Judgment affirmed.

**FISCHER, J.**, concurs.
**DEWINE, J.**, dissents.

**DEWINE, J.**, dissenting.

{¶12}  The only reason the officer provided for stopping the defendant in this case was the defendant's execution of a perfectly-legal left-hand turn.   As a result, I believe that we are compelled to reverse the trial court's decision to deny the motion to suppress.

{¶13}  The majority avoids this result by suggesting that the statute is ambiguous, and then concluding that even if the officer got the law wrong, because the law was ambiguous he still had probable cause to make the stop.

{¶14}  But it is hard to understand what is ambiguous about the statute. Let's look at it again:

> At any intersection where traffic is permitted to move in both directions on each roadway entering the intersection, an approach for a left turn shall be made in that portion of the right half of the roadway nearest the center line thereof and by passing to the right of such center line where it enters the **intersection and after entering the intersection the left turn shall be made so as to leave the intersection to the right of the center line of the roadway being entered.** Whenever practicable the left turn shall be made in that portion of the intersection to the left of the center of the intersection.

(Emphasis added.)  R.C. 4511.36(A)(2).  Far from being ambiguous, the language is quite precise.  It simply requires the driver "square into the turn," as we are all

6

taught in drivers' education class. The driver must proceed through the intersection and across the center line before turning left. The statute says nothing about whether the driver must make the turn into the right or left side of the right lane. Under the plain language of the statute, a turn into either side is perfectly legal.[1] The turn simply must "be made so as to leave the intersection to the right of the center line of the roadway being entered."

{¶15} The majority's finding that the statutory provision (which has been on Ohio's law books in its current form since 1951) is ambiguous will come as a surprise to many. Over a half century ago, one Ohio court noted that the purpose of the 1951 enactment was to "make it perfectly clear that 'cutting the corner' " of the intersection was what was intended to be prohibited. *Richlin v. Gooding Amusement Co.*, 113 Ohio App. 99, 103, 170 N.E.2d 505 (8th Dist.1960).[2] At least sixteen other states include identical or practically identical language in their traffic codes. *See, e.g*, 21 Del.C. 4152(a)(2); Mo.Rev.Stat. Sec. 300.215(2); W. Va. Code Sec. 17C-8-3(a).[3] So do countless municipalities.[4] *See, e.g.,* Columbus, Ohio, Municipal Code 2131(a)(2). Presumably, the ubiquitousness of the statutory language come

---

[1] R.C. 4511.36(A)(3) demonstrates that when the legislature wants to require that the turn be made into the "left-hand lane of the roadway being entered into" it is perfectly capable of drafting language saying exactly that. Contrary to the majority's suggestion, this section is not limited to turns onto a one-way street. Rather, it is written to include turns from a one-way street onto a two-way street—a street precisely like Madison Road, the road the defendant was turning on in this case.

[2] The majority misses the point in its discussion of *Richlin*. I cite to *Richlin* not to assist in the construction of the statute; the language of the statute is perfectly clear. The point is that, until today, courts for 60 years have had little difficulty understanding that what the statute prohibits is cutting the corner while turning left.

[3] Nine states have identical language, and another seven have language that is nearly so.

[4] I'll spare the reader citations to all the states and the municipalities, but they can be readily found on LEXIS or Westlaw. And cases like *Pitcher v. Rogers*, 259 F.Supp. 412 (N.D.Miss. 1966) and *Chavez v. United States*, 192 F.Supp. 263 (Mont.1961), provide good examples of the safety hazards that come from the too-sharp, corner-cutting left turns that the statute aims to prevent.

from its recommendation in the 1948 version of the Uniform Vehicle Code, a model code drafted by the National Committee on Uniform Traffic Laws and Ordinances, "designed and advanced as a comprehensive guide or standard for state motor vehicle laws." Uniform Vehicle Code (rev. 1962), at *III.*

{¶16} Because I am confident that the turn was perfectly legal under any plain reading of the statute, I disagree with the majority's conclusion that the officer's stop of Mr. Stadelmann for violating the law was "objectively reasonable." Therefore, I respectfully dissent.

Please note:

The court has recorded its own entry on the date of the release of this opinion.