[Cite as *State v. Knappenberger*, 2025-Ohio-1574.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

ALEXANDER M. KNAPPENBERGER,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 24 MA 0103**

---

Criminal Appeal from the
Struthers Municipal Court of Mahoning County, Ohio
Case No. TRD2401270

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. John N. Zomoida, Jr.,* Law Director for City of Struthers, for Plaintiff-Appellee and

*Alexander M. Knappenberger*, pro se.

Dated:  May 1, 2025

**Robb, P.J.**

{¶1}    Defendant-Appellant Alexander M. Knappenberger appeals the decision of the Struthers Municipal Court finding him guilty of the minor misdemeanor traffic offense of completing a left turn in violation of R.C. 4511.36(A)(2).   Appellant reviews various traffic laws and challenges the sufficiency of the evidence to find him guilty beyond a reasonable doubt.   He also presents arguments sounding in weight of the evidence, including complaints about the officer's credibility.   For the following reasons, Appellant's conviction is upheld, and the trial court's judgment is affirmed.

STATEMENT OF THE CASE

{¶2}    On July 14, 2024 at approximately 5:45 p.m., Springfield Township police responded to an accident between Appellant's car and a pickup truck near the intersection of Garfield Road and Columbiana Road.   Appellant was cited for a minor misdemeanor violation of R.C. 4511.36(A)(2), which provides rules for a left turn at an intersection.   The case was tried to the court with Appellant representing himself.

{¶3}    According to the evidence, Appellant's vehicle was traveling west on Garfield Road before he started to make a left turn onto Columbiana Road to travel south. (Tr. 9-10, 16).   The pickup truck was traveling north on Columbiana Road, which ends at Garfield Road (and preparing to turn right to travel east on Garfield Road for a brief moment before continuing north on another road).   (Tr. 9, 16).   The truck had a stop sign while Appellant did not.   (Tr. 16).

{¶4}    The investigating officer testified she determined Appellant "cut the turn too short" based upon the statements at the scene.   (Tr. 8).   She read Appellant's statement:

> I was making a left turn onto Columbiana Road from East Garfield Road, and the road's apparently at a perfect angle where the A-pillar blind spot of the 2009 Honda Civic, because I didn't see the truck until one second before we collided.   I can't recall or even say who was at fault with any certainty, but he may have went past the stop sign (inaudible) a bit, and I swerved to miss him, but his front left bumper area still sideswiped my car.

(Tr. 11-12).   The officer testified the truck's damage was closer to the wheel well.   (Tr. 20).

Case No. 24 MA 0103

**{¶5}** As to the truck proceeding past the stop sign, the officer opined "you can't see anything from that far back." (Tr. 14). She said there was a "blind spot" plus trees and foliage blocking the view down Garfield Road from the location of the stop sign (which was not accompanied by marked stop lines). She thus concluded the law permitted the driver of the truck to pull past the sign and stop at the point on his road where he was able to see both ways before moving to the next road. (Tr. 13-15).

**{¶6}** The officer testified to receiving Appellant's dash-cam video via email from which she observed, "the two vehicles colliding, the defendant's vehicle short siding the turn." (Tr. 13). The state played the video at trial.

**{¶7}** Appellant testified in his own defense. He modified his prior statement by claiming he initially noticed the truck before beginning his turn but then looked forward to make sure no traffic was coming toward him on Garfield Road. He said by the time he made his left turn, the truck had pulled past the stop sign and into his vehicle's blind spot (which he previously referred to as the "A-pillar blind spot"). Noting he approached this same stop sign (from the truck's position) "many times" in the past, he acknowledged: "if I see no cars coming, I'll pull past the stop sign. R.C. 4511.43 allows you to do that. If I see someone coming with a trailer or coming, I'll stop back at the stop sign to give them more room to turn because otherwise you would collide with someone at that particular intersection . . ." (Tr. 22).

**{¶8}** Appellant admitted the vehicles made contact while the pickup truck was still on the road with the stop sign. (Tr. 24-25). He argued although the truck had not reached the physical junction of the roads, the "vast area past the stop sign" was part of the intersection and the truck had no right to be on the part of its road past the sign while Appellant was turning. (Tr. 17, 22-23, 25). He additionally complained the truck did not use a turn signal as it passed the stop sign's location. (Tr. 22-23). He testified his insurance company "sided with" him because he had no traffic control device and/or the vehicle on the right at an intersection has the right-of-way. (Tr. 23).

**{¶9}** Appellant presented four exhibits. Exhibit A was a photograph of the stop sign and part of the intersection showing the length of Columbiana Road between the stop sign and Garfield Road. Exhibit B was an aerial view of the intersection. Exhibit C contained five photographs; four from the vantage point of a driver approaching the left

turn from Garfield Road and one from the vantage point of a driver approaching the stop sign on Columbiana Road.  Exhibit D was a page from a case Appellant cited.

**{¶10}** The trial court found Appellant guilty of completing a left turn in violation of R.C. 4511.36(A)(2) and imposed a fine of $150 plus court costs.  The court explained: "The video clearly shows that Defendant failed to pass to the right of the center line where it enters the intersection before making his turn and after entering the intersection failed to make the left turn so as to leave the intersection to the right of the center line of the roadway being entered."  (10/11/24 J.E.).

**{¶11}** Appellant filed a timely notice of appeal.  His pro se brief sets forth four assignments of error containing some overlapping arguments.  We address the arguments in an order conducive to our analysis and divide legal claims including sufficiency of the evidence from claims on credibility and weight.  *See State v. Thompkins*, 78 Ohio St.3d 380, 386-387 (1997) (distinguishing sufficiency and weight).

SUFFICIENCY OF THE EVIDENCE & OTHER LEGAL CLAIMS

**{¶12}** Arguments made under Appellant's second and third assignments of error were also introduced under his first assignment of error.  These three assignments of error read:

"Not Proven Guilty Beyond a Reasonable Doubt."

"Law Not Properly Applied From Ohio Revised Code 4511.36."

"Trial Court Erred by Considering Police Testimony Stating an intersection does not begin after a stop sign."

**{¶13}** Whether the evidence is legally sufficient to sustain a conviction is a question of law dealing with adequacy.  *Thompkins* at 386.  An evaluation of witness credibility is not involved in a sufficiency review, as the question is whether the evidence is sufficient if it is believed.  *State v. Murphy*, 91 Ohio St.3d 516, 543 (2001).  In other words, sufficiency involves the state's burden of production rather than its burden of persuasion.  *Thompkins* at 390 (Cook, J., concurring).

**{¶14}** In reviewing the sufficiency of the evidence, we view all evidence, including reasonable inferences, in the light most favorable to the prosecution to ascertain whether "any" rational trier of fact could have found the elements of the offense proven beyond a reasonable doubt.  *State v. Getsy*, 84 Ohio St.3d 180, 193 (1998), quoting *Jackson v.*

*Virginia*, 443 U.S. 307, 319 (1979).  Circumstantial evidence inherently possesses the same probative value as direct evidence.  *State v. Treesh*, 90 Ohio St.3d 460, 485 (2001).

**{¶15}** Appellant emphasizes the application of three traffic statutes.  First, he points to the general statute governing the right-of-way at an intersection, which provides: "When two vehicles, including any trackless trolley or streetcar, approach or enter an intersection from different streets or highways at approximately the same time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right."  R.C. 4511.41(A).  He says he had the right-of-way under this provision because he was to the right of the pickup truck at the intersection.

**{¶16}** As the next division of this statute points out, "The right-of-way rule declared in division (A) of this section is modified at through highways and otherwise as stated in Chapter 4511. of the Revised Code."  R.C. 4511.41(B).  That is to say, the cited right-of-way rule is inapplicable at an intersection where one vehicle is subject to a traffic control device and the other vehicle is not.[1]  Regardless, it is not disputed Appellant had the right-of-way *on Garfield Road* as compared to traffic entering Garfield Road.  In other words, as compared to the truck on the road with the stop sign, Appellant had the right-of-way to make a left turn onto Columbiana Road *in a lawful manner*.  The dispositive issue is whether Appellant made a lawful left turn.

**{¶17}** Appellant complains the other driver failed to stop or remain stopped behind the location of the stop sign, citing to the following statute:

> every driver of a vehicle . . . approaching a stop sign shall stop at a clearly marked stop line, but if none, before entering the crosswalk on the near side of the intersection, or, if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering it. After having stopped, the driver shall yield the right-of-way to any vehicle in the intersection or approaching on another roadway so closely as to constitute an immediate hazard during

---

[1] For instance, if a vehicle had been traveling east on Garfield Road (to the left of the pickup truck at the intersection), this would not have provided the truck at the stop sign the right-of-way merely because it was to the right of oncoming eastbound traffic.

the time the driver is moving across or within the intersection or junction of roadways.

R.C. 4511.43(A).

{¶18} Realizing the collision occurred on the roadway Appellant was entering and the pickup truck never entered the "intersecting roadway," Appellant nevertheless attempts to justify his turn by claiming the truck entered his right-of-way by moving past the stop sign. He criticizes the truthfulness of the officer's opinion that the other driver needed to move forward under the first part of the statute before making the stop in order to view approaching traffic. He then moves to the second part of the statute and claims the trial court should have considered "the intersection or junction of roadways" start back where the stop sign was located.

{¶19} The state's evidence included the video of the collision (from the viewpoint of Appellant's dash-cam). The video depicts a telephone pole close behind the stop sign, which would interfere with one view, and a bush on the opposite corner, which would interfere with another view. There was no marked line at the stop sign and no crosswalk ("on the near side of the intersection"). As detailed in Statement of the Case above, the investigating officer testified a driver could not "see anything" from the area where the stop sign is located, opining the driver of the truck could properly travel further along Columbiana Road before stopping to ascertain when to safely turn on Garfield Road. She indicated the layout of the roadway created a "blind spot" and also explained there were trees and foliage blocking the view down Garfield Road from the stop sign's location. The evidence was sufficient to show the driver of the pickup truck was permitted to move to the "point nearest the intersecting roadway" where he can see whether it was clear "before entering" that intersecting roadway and did not otherwise violate the cited stop sign law.

{¶20} Moreover, Appellant's brief acknowledges the stop sign at issue was located 40 feet from the intersecting roadway (Garfield Road). At trial, he acknowledged the pickup truck never left its road of travel (Columbiana Road). His brief says the truck was 20 feet past the stop sign at the time of the accident, which would mean the truck was 20 feet from the intersecting road it was approaching. Contrary to Appellant's contention, the angle of the roads did not encourage him to make an overly short left turn.

In fact, a rational person could find the angle would have made it easier to stay to the right of center on Columbiana Road.

**{¶21}** Notably, the other driver did not cause Appellant to make an improper left turn, and Appellant does not allege such a situation existed here. The statute listing the rules for a left turn does not require a finding that the violator (Appellant) caused a collision. A person can commit a violation of the left turn rules in R.C. 4511.36(A)(2) even where no other cars are present at the intersection.

**{¶22}** Appellant's guilt is ultimately governed by the charged traffic offense, which states it is a minor misdemeanor to violate the rules applicable to a driver of a vehicle intending to turn at an intersection. R.C. 4511.36(A),(D). The pertinent division states:

> an approach for a left turn shall be made in that portion of the right half of the roadway nearest the center line thereof and by passing to the right of such center line where it enters the intersection and after entering the intersection the left turn shall be made so as to leave the intersection to the right of the center line of the roadway being entered. Whenever practicable the left turn shall be made in that portion of the intersection to the left of the center of the intersection.

R.C. 4511.36(A)(2) (on two-way street intersections).

**{¶23}** Appellant claims this statute does not prohibit a "short" left turn, citing two First District cases evaluating a different type of left turn.[2] In each case, a driver challenged a stop claiming he did not violate the rules for a left turn by making "a wide left turn, turning into the far, right lane, instead of the lane closest to the center line." *State v. Kirkpatrick*, 2017-Ohio-7629, ¶ 2, 7 (1st Dist.), citing *State v. Stadelmann*, 2013-Ohio-5035 (1st Dist.). Appellant believes the following comments about R.C. 4511.36(A)(2) in the First District's older *Stadelmann* case are relevant: "First, and more likely, it means that a driver must turn into the lane closest to the center line when making a left turn onto a two-way street . . . Alternatively, the statute could simply mean that one must complete

---

[2] The term "short" left turn is sometimes used to describe "cutting the corner" (with the corner referring to the center of the intersection). To the extent Appellant uses it to describe any turn less than a perfect "squaring of the corner," we note we are distinctly discussing the statutory prohibition against what could be termed an "overly short" left turn, one that "cuts the corner" so much that there is a violation of the left turn rule against leaving the intersection by traveling into oncoming traffic in the next roadway (the rule requiring the left-turner to stay to the right of the center line of the road being entered).

the turn without driving left-of-center—i.e. into oncoming traffic." *Stadelmann* at ¶ 3, 9 (opining the second alternative "seems less likely" given other laws), citing R.C. 4511.25 (generally stating a vehicle shall be driven on the right half of a roadway and incorporating R.C. 4511.36 by listing an exception "when making a left turn under the rules governing such movements").

**{¶24}** Initially, we point out the cited case law is not on point here, as it was about a wide left turn into the far right lane when there was a lane closer to the right of center; it was not about whether sharply cutting the left turn so as to travel left of center on the next roadway would constitute an improper left turn subjecting the driver to a citation under R.C. 4511.36(A)(2). In addition, Appellant emphasizes the opinion that the second meaning "seems less likely" than the first meaning without recognizing the importance of the court's phraseology, "the statute could simply mean. . ." *Id.* at ¶ 3. However, the use of the word "simply" in context of that case (on whether a *wide* left turn was prohibited) shows the court was discussing whether an overly short left turn was the *only* type of left turn that could be found violative of the statute. The court did not say an overly short left turn that cuts into the lane of oncoming cross-traffic cannot constitute a violation of R.C. 4511.36(A)(2).

**{¶25}** Regardless, the same district's subsequent *Kirkpatrick* opinion pointed out the statements quoted by Appellant were dicta. *Kirkpatrick* at ¶ 10, 14 ("Ultimately, the *Stadelmann* majority held that its resolution of the defendant's appeal did not depend upon an interpretation of R.C. 4511.36(A)(2), but upon whether the officer reasonably believed that the defendant had violated R.C. 4511.36(A)(2)."), citing *Stadelmann* at ¶ 10 (finding the officer had a reasonable belief the statute prohibited a wide right turn). Furthermore, the *Kirkpatrick* case relied on by Appellant then adopted the dissent from its *Stadelmann* case, emphasizing the plain and unambiguous language of R.C. 4511.36(A)(2) "requires the driver 'square into the turn,' as we are all taught in drivers' education class." *Id.* at ¶ 11, 13, citing *Richlin v. Gooding Amusement Co.*, 113 Ohio App. 99, 103 (8th Dist.1960). Accordingly, Appellant misinterprets the case law he cites, which is not binding on this court in any event.

**{¶26}** The plain language of the first sentence of the statute defining the offense required Appellant to comply with various rules in making the left turn: (1) approach the

left turn in the portion of the right half of the roadway nearest the center line; (2) pass to the right of the center line where it first enters the intersection (rather than starting the turn before the intersection begins); and (3) after entering the intersection, make the left turn "so as to leave the intersection to the right of the center line of the roadway being entered." R.C. 4511.36(A)(2).

**{¶27}** Notably, Appellant's cutting of the corner was not slight. Upon watching the video from Appellant's dash-cam, a rational fact-finder could conclude Appellant started his turn across Garfield Road's center line before entering the intersection and had fully entered the wrong lane on Columbiana Road when he noticed the truck (at which point he attempted to avoid the crash by swerving into the lane he was attempting to enter). Viewing the evidence, in the light most favorable to the state as required for a sufficiency review, a rational person could easily find Appellant failed to make the left turn so as to leave the intersection to the right of the center line of the roadway being entered, which constitutes a violation of a left turn rule in R.C. 4511.36(A)(2). The trial court alternatively concluded Appellant violated the requirement to pass to the right of the center line where it first entered the intersection (rather than starting the turn before the intersection began). Although not required in order to affirm Appellant's conviction, we alternatively conclude some rational fact-finder could find this rule was violated as well after construing the evidence and inferences in the light most favorable to the prosecution.

**{¶28}** Finally, we address the last sentence of the pertinent statutory division: "Whenever practicable the left turn shall be made in that portion of the intersection to the left of the center of the intersection." R.C. 4511.36(A)(2). Contrary to Appellant's contention, this is not an exception to the left turn procedure in the prior sentence, and it did not allow him to start his turn earlier on Garfield Road than the intersection or to then drive at such an angle so as to cut into the lane of oncoming traffic on the road he was entering. *See Richlin* at 103 (the amendment adding the last sentence of R.C. 4511.36(A)(2) "does not change the basic requirements for making a left-hand turn at a street intersection"), *overruled on other grounds by Daniels v. Northcoast Anesthesia Providers, Inc.*, 2018-Ohio-3562 (8th Dist.).

**{¶29}** Rather, the final sentence of division (A)(2) is *an additional procedure* added to assist in traffic flow and safety.[3] In other words, upon properly approaching the left turn as one travels into the intersection, the left-turning driver can cut through the *center of the intersection* if practicable (rather than precisely squaring the left turn), but *only* if he enters his new roadway to the right of that new road's center line. The trial court did not find Appellant violated the additional procedure in the last sentence of R.C. 4511.36(A)(2), which was not at issue in this case (as Appellant clearly made the left turn at an angle to the left of the intersection's center).[4]

**{¶30}** Appellant's first three assignments of error are without merit to the extent they raise legal issues, including sufficiency of the evidence. To the extent they raise issues concerning the weight of the evidence, they are overruled under the next section.

WEIGHT OF THE EVIDENCE

**{¶31}** Appellant's fourth assignment of error is titled simply: "Police Bias." He raises arguments sounding in weight of the evidence here and under the prior assignments of error (which are evaluated here).

**{¶32}** Weight of the evidence concerns the effect of the evidence in inducing belief, and the corresponding review evaluates "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *Thompkins*, 78 Ohio St.3d at 387. The appellate court considers whether the state met its burden of persuasion. *Id.* at 390 (Cook, J., concurring) (as opposed to the state's burden of production involved in a sufficiency review).

**{¶33}** When a defendant argues a conviction is contrary to the manifest weight of the evidence, the appellate court reviews the entire record, weighs the evidence and all

---

[3] For example, the last sentence of R.C. 4511.36(A)(2) assists in traffic flow by explaining a precise 90-degree turn to the left is not required (as long as its preceding rules were followed, including *staying to the right of the center line of the road being entered*); it also encourages the left-turner (who may be waiting for oncoming traffic to clear before making the left turn) to refrain from pulling too far forward in the intersection, which may block opposing left-turners or result in the vehicle being so far forward that when the left-turner finally has a chance to make his turn he essentially needs to somewhat loop back.

[4] Even if the last sentence could be read as an exception to some rule, it would clearly not apply to the third rule (on exiting the intersection "to the right of the center line of the roadway being entered"). Regarding the second rule, for any who read it as requiring a perfectly-squared-off turn (even though it merely says to stay to right of the center line "where it enters the intersection" without referencing the center of the intersection), such readers may view the last sentence as an exception to any perfect-square-off procedure; however, this would still have no bearing on the third rule.

reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Lang*, 2011-Ohio-4215, ¶ 220, citing *Thompkins* at 387.

**{¶34}** "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. Hunter*, 2011-Ohio-6524, ¶ 118, quoting *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. The trier of fact occupies the best position from which to weigh the evidence and judge the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). "We therefore generally proceed under the premise that when there are two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, we do not choose which one we believe is more credible." *State v. Carter*, 2017-Ohio-7501, ¶ 105 (7th Dist.), citing *State v. Gore*, 131 Ohio App.3d 197, 201 (7th Dist. 1999).

**{¶35}** In contesting the officer's impartiality, Appellant complains the officer failed to reply with "Good morning" when he began cross-examining her, claiming the transcript fails to show the long pause between his greeting and his first question to the officer. Contrary to Appellant's contention, the testifying officer did not evince bias on the stand, and her testimony did not lack credibility.

**{¶36}** The officer's testimony was credible, including on the topic of whether a driver could clearly see down Garfield Road from Columbiana Road if remaining back at the stop sign. In fact, Appellant's exhibits support the conclusion that the location of the stop sign did not provide a view of traffic approaching on Garfield Road and that the pickup truck driver was moving to the point nearest the intersecting roadway where he could obtain a view of approaching traffic before entering that roadway. Appellant admitted the collision occurred on Columbiana Road; the truck was in its lane and never left its road of travel. Appellant's brief indicates the truck was still 20 feet from the intersecting roadway it was approaching when the accident occurred.

**{¶37}** The trial court had the opportunity to witness the testimony of the officer and the testimony of Appellant. The court could compare Appellant's statement at the scene (where he admitted he did not see the truck) with his testimony at trial (where he claimed

he noticed the truck before making the turn and then lost sight of it). The trial court watched the video of the accident multiple times at trial from which the extreme cut of Appellant's early turn is evident. It was within the province of the trial judge at the bench trial to assign credibility to the portions of testimony being challenged and to weigh all of the testimony and evidence as supporting the conclusion that Appellant committed the charged traffic offense by failing to follow all rules for making a proper left turn. The fact-finder did not lose its way in concluding the weight of the evidence demonstrated he did not "make the left turn . . . so as to leave the intersection to the right of the center line of the roadway being entered" as required by R.C. 4511.36(A)(2). In addition, Appellant fails to show the evidence weighs heavily against the trial court's alternative holding that he violated the requirement to pass to the right of the center line where it first entered the intersection (rather than starting the turn before the intersection began). This is not the exceptional case where the evidence weighs heavily against Appellant's minor misdemeanor traffic conviction.

{¶38} Appellant's brief also makes multiple allegations of police bias against the officer and/or the police department due to past conflicts. Appellant failed to present evidence on these allegations or even mention them below. "A reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter." *State v. Ishmail*, 67 Ohio St.2d 16, 18 (1981), paragraph one of the syllabus. Appellate arguments requiring proof outside the record are not appropriately considered on direct appeal. *State v. Hartman*, 93 Ohio St.3d 274, 299 (2001). In accordance, all allegations outside of the record filed in this case are barred from being raised on appeal. Appellant's fourth assignment of error lacks merit.

{¶39} For the foregoing reasons, Appellant's assignments of error are overruled, his conviction is upheld, and the trial court's judgment is affirmed.


Waite, J., concurs.

Dickey, J., concurs.


Case No. 24 MA 0103

[Cite as *State v. Knappenberger*, 2025-Ohio-1574.]

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Struthers Municipal Court of Mahoning County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**